HARRELL, J.
In this case, a re-match of sorts[1] between the General Assembly and certain Baltimore landlords, we revisit the *196 nature of Maryland’s “ground lease” system. A group of plaintiffs-lessors holding ground leases brought this action against the State challenging, on Maryland Constitutional grounds, Chapter 286 of the Laws of Maryland, which 2007 legislation replaced ejectment with a lien-and-foreclosure process for defaulting lessees of ground leases when more than six months of rent is overdue. The Circuit Court for Anne Arundel County determined that the Legislature exceeded its powers and held Ch. 286 of the 2007 Laws of Maryland invalid as an abrogation of vested rights. The State appealed this decision, arguing that the Legislature is allowed to alter remedies by statute and that no vested property rights are implicated. Before the Court of Special Appeals could decide the appeal,[2] we granted certiorari to determine if the General Assembly indeed has authority to invalidate the ejectment clauses[3] present in extant ground leases.
I. Facts and Legal Background
The ground lease is a centuries — old home financing tool found almost exclusively in Maryland. See Banks v. Haskie, 45 Md. 207, 218 (1876). With roots in feudal England, the ground lease, although little known elsewhere in the United States, is common in Maryland. See Lewis Mayer, Ground Rents in Maryland 43 (Cushings & Bailey ed., 1883). Although ground leases have changed little over the centuries, recent legislation attempted “reforms” of the ground lease system. In late 2006, The Baltimore Sun published a three-part investigation into the ground rent system. Fred Schulte & June Arney, Part 1 of 3: On Shaky Ground, The Baltimore Sun, Dec. 10, 2006, http://www.baltimoresun.com/business/bal- *197 te.bz.groundrentl0decl0,0,5955952.story (last retrieved Nov. 13, 2013). Focusing on some anecdotal reports of tenants being ousted from their homes due to missed payments totaling far less than the value of the home, these articles led to a legislative attempt during the 2007 session of the General Assembly to address perceived abuses of the ground lease system. Appellees, a class representing ground lease holders,[4] claim that the Legislature abrogated impermissibly their vested rights. Appellant, the State, counters that the legislation at issue is simply a substitution of remedies aimed at curtailing reported abuses of tenants by ground lease holders.
As noted earlier, the legislation at issue here is Chapter 286 of the 2007 Session Laws of Maryland, which revised Section 8-402.2 of the Real Property Article (“RP” [5]). Md. Code (1974, 2010 Repl. Vol.), § 8-402.2 of the Real Property Article. Appellees challenged three aspects of Chapter 286. The first challenge is to Chapter 286’s revision of RP § 8-402.2(a)(2) to prohibit ejectment proceedings for residential ground leases with four or fewer units.[6] Second, Appellees challenged Chapter 286’s enactment of RP § 8-402.3, establishing a lien-and-foreclosure process available for ground lease holders whose tenants owe at least six months’ rent.[7] Finally, Appellees challenged Chapter 286’s institution of RP *198 §§ 8-402.3(j)(3)(ii)-(k)(l)(ii), limiting the amount of attorney’s fees that would be available as part of a judgment.
Appellees, 49 individual plaintiffs (“the Class”), filed suit against the State on 1 November 2007 in the Circuit Court for Anne Arundel County.[8] In their suit, the Class claimed that by replacing ejectment with the lien-and-foreclosure procedure, the State abrogated unconstitutionally a vested property right. In addition to seeking declaratory relief, the Class sought $114 million in damages they claim were caused by the State’s enactment of Chapter 286. Both sides moved for summary judgment. After we issued our opinion in Muskin v. State Dep’t of Assessments & Taxation, 422 Md. 544, 30 A.3d 962 (2011), the Circuit Court heard the cross-motions for summary judgment, granted the Class’ motion for partial summary judgment on their constitutional and damages claims, and dismissed the remaining claims as moot. On 11 April 2012, the court entered the judgment as final.
The Circuit Court began its analysis with the Maryland Constitution’s prohibition against the Legislature enacting any law “authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation.” Md. Const, art. Ill, § 40. In considering the constitutional implications, the Circuit Court addressed two questions in its ruling: the first is the threshold question of whether a ground lease holder’s action for ejectment constitutes a vested right or a remedy; the second is the ultimate question of whether Chapter 286 constitutes an unconstitutional taking through abrogation of vested property rights. In answering the threshold question, the Circuit Court interpreted our decision in Muskin to hold that the bundle of vested rights that make up ground leases includes the vested right of re-entry upon default. Because it interpreted Muskin as holding that the right to re-enter in the event of default is a vested property right, the Circuit Court *199 held that Chapter 286 operates as an unconstitutional taking of the ground lease holder’s property.
We granted certiorari to consider the following question:
Is legislation substituting one remedy for failure of a ground lease tenant to pay rent (lien and foreclosure) for another (ejectment) a permissible alteration of remedies that does not impermissibly abrogate vested rights of ground lease owners?
We shall affirm the Circuit Court’s judgment.
II. Discussion
Because the Circuit Court’s grant of partial summary judgment rested purely on questions of law in this case, we review the judgment without deference to the trial court. Conaway v. Deane, 401 Md. 219, 243, 932 A.2d 571, 584 (2007) (citing Livesay v. Baltimore, 384 Md. 1, 9, 862 A.2d 33, 38 (2004)).
The State argues that Chapter 286 replaced merely one remedy (“re-entry through ejectment”) with another (lien-and-foreclosure). It relies therefore on our longstanding rule that legislation altering remedies does not offend the Maryland Constitution and concludes that this law is constitutional. The State avers that, because Chapter 286 does not inhibit a ground lease holder’s ability to collect rents or abridge the lease owner’s reversionary interest in the property, it neither impairs the underlying contract nor abrogates a vested right. In the State’s view, the Circuit Court misinterpreted Muskin as foreclosing the possibility of legislative alteration of remedies concerning ground leases at all. Rather, it says Muskin was decided as it was because Chapter 290 represented a complete extinguishment of existing ground leases and cut off all remedies available to a ground lease holder. Under the State’s theory, because Chapter 286 does not cut off all remedies and does not extinguish ground leases, it should be held valid.
The Class counters that because Muskin holds explicitly that the right to re-enter in the event of default is a vested *200 right, Muskin renders the present one a simple case. It points out that, in Muskin, we explained that the Maryland Declaration of Rights and Constitution prohibit the retrospective abrogation of vested rights. Muskin, 422 Md. at 555, 30 A.3d at 968 (“Maryland’s Declaration of Rights and Constitution prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights”) (citing Dua v. Comcast Cable of Md., Inc., 370 Md. 604, 630 n. 9, 805 A.2d 1061, 1076 n. 9 (2002)). Because the right to re-enter and take possession of their properties in the event of default is a vested right, the Class urges, the Legislature cannot abrogate those rights under the guise of altering a remedy. The Class draws thus a meaningful distinction between the remedy of foreclosure and the right of re-entry by summary ejectment in the event of default.
The Class does not contest the ability of the Legislature to alter remedies. Rather, the Class contends, by cutting off the right of re-entry, the Legislature impaired a critical and vested right of the ground lease holder. In its view, because the statute’s system of lien-and-foreclosure can never provide ground lease holders with possession of the property for which they hold legal title, it abrogates their vested property rights.
A. History of Ground Rents in Maryland
Leases for ground rents have been present in Maryland since Colonial times. Banks, 45 Md. at 218. Like any lease, they are intended to benefit mutually the lessor and lessee. Id. at 217. The lessee enters into the agreement to “acquire a perpetual interest in the leased premises, which would justify his making permanent improvements thereon, and enable him to avail himself of the value of the property thus enhanced ....” Id. The lessor enters into the agreement, among other reasons, “to secure the prompt payment in perpetuity of the interest on a sum of money, equivalent to the value of the property....” Id. Ground leases have also been traded commodities since at least the Nineteenth Century. Id. People seeking safe investments would purchase them from ground lease holders as an income stream. Id. Additionally, because *201 often the property increased in value with the development of the surrounding area, lessees would sell their rights to possess the land. Id.
The language of ground rent leases has changed little since 1750. Frank A. Kaufman, The Maryland Ground Rent-Mysterious but Beneficial, 5 Md. L.Rev. 1, 15 (1940). In a ground lease, “the lessor grants to the lessee, his executors, administrators, and assigns a specifically described lot along with the improvements on that lot and all rights and appurtenances connected with it for a term of ninety-nine years.” Id. “The lessee covenants in return for himself, his executors, administrators, and assigns to pay a specified yearly rental during the running of the lease in equal semi-annual installments and also agrees to pay all the taxes and assessments on the leased property.” Id. The lessee and his assigns are given the valuable option to renew the lease at any point during the ninety-nine year term. Id. at 16.
Ground leases are either redeemable or irredeemable. A redeemable ground lease grants the tenant the absolute right to tender an amount of cash to the ground lease holder that extinguishes the ground lease and vests a fee simple absolute in the tenant. Mayer, supra, at 120. Sections 8-110 and 8-110.1 of the Real Property Article govern the process by which a ground lease tenant may redeem the ground lease.[9] If the ground lease was created after 8 April 1884, a ground lease tenant has an absolute right to redeem *202 the ground lease that the ground lease holder cannot abrogate or resist. Kaufman, supra, at 20 (citing Md.Code (1939) Art 21, Secs. 110, 111); see Brager v. Bigham, 127 Md. 148, 160, 96 A. 277, 280-81 (1915) (holding that the right of redemption is read into a ground lease, and no covenant in the lease can estop the lessee from exercising the right to redeem the ground lease). An irredeemable ground lease, on the other hand, is a ground lease that does not contain a provision allowing the leaseholder tenant to redeem the ground lease. RP § 8-110.1(a)(5). As indicated above, all such ground leases must have been created prior to 9 April 1884. Id.
The lease specifies typically what action the lessor may pursue in court if the lessee is late paying rent. Traditionally this relief included: (1) to make distress on the arrearage; (2) after 60 days of nonpayment, to take over the premises by reentry and hold them until the arrearage is paid up; and (3) after six months of nonpayment, re-enter the premises and possess them as if the lease had never been made. See Kaufman, supra, at 15-16; see also Mayer, supra, at 51-53. The right of re-entry is inserted into the ground lease principally as security for the payment of rents. Before the Legislature passed Chapter 286, RP § 8-402.2(a) afforded the leaseholder the opportunity to pursue ejectment, which allowed it to re-enter and take possession of the property. Md.Code (1974, 2003 Repl. Vol.), § 8-402.2(a) of the Real Property Article. The pre-2007 Code provided:
Whenever, in a case that involves a 99-year ground lease renewable forever, at least 6 months ground rent is in arrears and the landlord has the lawful right to reenter for the nonpayment of the rent, the landlord, no less than 30 days after sending to the tenant by certified mail, return receipt requested, at the tenant’s last known address a bill for the ground rent due, may bring an action for possession of the property under § 14-108.1 of this articled]
Md.Code (1974, 2003 Repl. Vol.) § 8-402.2(a) of the Real Property Article. Thus, under a ground lease, the landlord could gain possession of the property rather directly: by giving notice, waiting 30 days, and bringing an action for *203 possession under RP § 14-108.1.[10] If the landlord complies then with the provisions of § 8-402.3, it could hold the property free and clear of the tenant’s interest after six months. As § 8 — 402.2(b)(2) of the Real Property Article provided before 2007, the property would be:
discharged from the lease and the rights of all persons claiming under the lease are foreclosed unless, within 6 calendar months after execution of the judgment for possession, the tenant or any other person claiming under the lease: (i) Pays the ground rent, arrears, and all costs awarded against that person; and (ii) Commences a proceeding to obtain relief from the judgment.
Md.Code (1974, 2003 Repl. Vol.) § 8-402.2(b)(2) of the Real Property Article.[11] Expiration of six months without payment and legal action by the tenant or his assignee completed the ejectment process.
Under the challenged 2007 law (Chapter 286), the ejectment provision set forth immediately above “does not apply to residential property that is ... used ... for four or fewer dwelling units.” So, in 2007 these residential ground lease holders lost the right to re-enter on default and obtain discharge of tenants’ and mortgagees’ rights. Rather, under the new law set forth in RP § 8-402.3(d), the landlord was given a right to a lien against the real property on default, if the ground rent is unpaid six months after its due date. This lien “has priority from the date the ground lease was created.” RP § 8-402.3(0(2). If the ground rent remains unpaid, the ground lease holder may foreclose on the lien, and have their debt paid from the proceeds of the sale. RP § 8-402.3(n).[12] *204 If the ground lease is redeemable, the ground lease holder receives also the redemption amount from the proceeds of the foreclosure sale, and the foreclosure sale buyer takes title free of the ground lease. RP § 8 — 402.8(n)(3)(i). If the ground lease is irredeemable, however, the foreclosure buyer takes subject to the ground lease. RP § 8-402.3(n)(3)(ii).
B. Arguments by the Class
To reiterate, the Class makes three arguments for the invalidity of Chapter 286. These arguments are: (1) Muskin made the right to re-enter in the event of default a vested property right; (2) the right of re-entry in the event of default is a right distinct from the remedy of ejectment; and (3) Chapter 286 transfers ground lease holders’ property without just compensation.
C. Muskin Governs the Outcome
Put simply, the hash of the present case was settled effectively by the Court’s opinion in Muskin v. State Dep’t of Assessments & Taxation, 422 Md. 544, 30 A.3d 962 (2011). “Together, Maryland’s Declaration of Rights and Constitution prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights.” Id. at 555, 30 A.3d at 968 (citing Dua, 370 Md. at 630 n. 9, 805 A.2d at 1076 n. 9). “It is only in times of revolution that, by a stroke of the pen, vested rights founded upon contract have been annihilated.” Mayer, supra, at 128.
In Muskin, we reiterated the well-settled principle that “Article 24 of the Maryland Declaration of Rights, guaranteeing due process of law, and Article III, § 40 of the Maryland Constitution, prohibiting governmental taking of property without just compensation, have been shown, through a long line of Maryland cases, to prohibit the retrospective reach of statutes that would result in the taking of vested property rights.” Muskin, 422 Md. at 555-56, 30 A.3d at 968 (footnote omitted) (citing Dua, 370 Md. at 604, 805 A.2d at 1061). We said there, as well as in Dua, that
*205 “[i]t has been firmly settled by this Court’s opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how ‘rational’ under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking of a person’s property and giving it to someone else.”
Id. at 556-57, 30 A.3d at 969 (alteration in original) (quoting Dua, 370 Md. at 623, 805 A.2d at 1072).[13]
Thus, as we did in Muskin, “[t]o determine whether [the challenged statute (Chapter 286 in this case) ] is constitutional under Maryland law, we evaluate whether the statute purports to apply retrospectively and abrogates a vested right or takes property without just compensation.” Id. at 557, 30 A.3d at 969. “If a retrospectively-applied statute is found to abrogate vested rights or takes property without just compensation, it is irrelevant whether the reason for enacting the statute, its goals, or its regulatory scheme is ‘rational.’ ” Id. (citing Duo, 370 Md. at 623, 805 A.2d at 1072). “[T]he relevant standard for determining whether a retrospective statute is constitutional is ‘whether the vested rights are impaired and not whether the statute has a rational basis.’” Id. (quoting Dua, 370 Md. at 623, 805 A.2d at 1072).
i. Chapter 286 Operates Retrospectively.
As we stated in Muskin, “[retrospective statutes are those ‘acts which operate on transactions which have occurred or rights and obligations which existed before passage of the act.’” Muskin, 422 Md. at 557, 30 A.3d at 969 *206 (citing Langston v. Riffe, 359 Md. 396, 406, 754 A.2d 389, 394 (2000)). Generally, retrospective statutes that abrogate vested rights are unconstitutional. Id. Although “there is no bright line rule for determining what constitutes retrospective application, ... retrospective statutes are those that ‘would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.’ ” Id. at 557-58, 30 A.3d at 969 (quoting John Deere Const. & Forestry Co. v. Reliable Tractor, Inc., 406 Md. 139, 147, 957 A.2d 595, 599 (2008)). In determining whether a statute acts retrospectively, we evaluate “ ‘fair notice, reasonable reliance, and settled expectations’ to determine ‘the nature and extent of the change in law and the degree of connection between the operation of the new rule and a relevant past event.’ ” Id. at 558, 30 A.3d at 970 (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229, 255 (1994)). See also John Deere, 406 Md. at 147-48, 957 A.2d at 599-600 (adopting the Supreme Court’s Landgraf factors analysis for retrospectivity analysis in this State).
Applying the Landgraf model to the present case, as we did in Muskin, fair notice is not satisfied by the provisions of Chapter 286. Chapter 286 was passed on 2 April 2007, and made effective three months later on 1 July 2007. Thus, if a tenant defaulted prior to the enactment of Chapter 286, but the ground lease owner had not acted upon his/her/its accrued right to re-enter (i.e. had not begun yet the process for ejectment), the ground lease holder’s present right to seek a judicial remedy is eliminated by Chapter 286 in but three months.
Moreover, Chapter 286 impacts severely the reasonable reliance and settled expectations of ground rent owners by virtue of its extinguishment of the right of reentry and destruction of the reversionary interest. As this Court stated in Muskin, the settled expectations of ground rent owners does not lie solely in future rents, but rather “[gjround rent owners rely reasonably on the future income from ground rents or the *207 ability to sell the fee simple interest on the open market or in the future, if necessary.” Muskin, 422 Md. at 558, 30 A.3d at 970 (emphasis added). “[A] ground rent holder’s fee simple interest remained ... as settled an expectation as any fee simple owner’s interest in real property.” Id. (emphasis added) (citing Heritage Realty, Inc. v. Mayor of Baltimore, 252 Md. 1, 248 A.2d 898 (1969)). “The terms of the ground rent lease are fixed over the 99 year lease period and the conditions that create a reversionary interest in the property are predetermined.” Id. (emphasis added). Just as the Court found in Muskin, prior to adoption of Chapter 286, “owners of ground rent properties had no reason to believe that their interests were anything but well-settled, and had a reasonable basis to rely on the continuation of the state of the law permitting ground rent leases to continue.” Id.
As established further in Muskin, “[gjround rent leases, established through transactions consummated many years ago, create rights and obligations for ground rent owners and leaseholders.” Muskin, 422 Md. at 559, 30 A.3d at 970. One of these rights for the ground rent owners is the right to reentry in the event of default, which Chapter 286 extinguishes for all intents and purposes. Thus, Chapter 286 acts retrospectively to impair a strand of the ground lease holder’s bundle of rights, namely its right to reentry in the event of default. The remaining question is whether this right is a vested one.
ii. The Inseparable Bundle of Vested Rights in Maryland Ground Rent Leases.
To determine whether a right is vested, we analyze the nature of the right implicated by the challenged statute. We explained the proper framework for this analysis regarding the ground leaseholder’s rights in a ground rent lease most recently in Muskin. When analyzing the implicated rights under the proper framework for ground rent leases (i.e., the bundle of vested rights that is the essence of these leases), the ground leaseholder’s right of reentry must be *208 viewed as an inextricable part of the bundle of vested rights which the Legislature may not abolish retrospectively. Because Chapter 286 destroys the ground leaseholder’s right of reentry, we conclude that the statute is unconstitutional.
(a) The Proper Framework for the Analysis of Vested Rights in Ground Rents in this State (As Settled in Muskin ).
A ground rent lease in this State is defined as “a renewable 99 year lease where the fee simple owner of a property receives an annual or semi-annual payment (‘ground rent’) and retains the right to re-enter the property and terminate the lease if the leaseholder fails to pay.” Muskin, 422 Md. at 550, 30 A.3d at 965 (emphasis added) (citing Kolker v. Biggs, 203 Md. 137, 141, 99 A.2d 743, 745 (1953)). In Muskin, we provided, in clear and definite terms, the proper framework for vested rights analysis of the rights in these transactions. There, this Court stated that “[a] ground rent lease creates a bundle of vested rights for the ground rent owner, a contractual right to receive ground rent payments and the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew.” Id. at 559, 30 A.3d at 971 (emphasis added). The Muskin Court explained specifically that “[t]hese two rights cannot be separated one from the other; together they are the essence of this unique property interest, and as such, vested rights analysis must consider them together.” Id. (emphasis added).
Because the right to re-enter the property in the event of default is included in this bundle (as part of the lessor’s reversionary interest), this clear language directs how this Court should analyze the present case. Although Muskin determined that a failure to meet Chapter 290’s registration requirement could result in abrogation of the vested right to receive ground rents and the reversion at the expiration of the lease, the framework established in Muskin, i.e., that the bundle of the ground lease holder’s rights are inseparable for *209 purposes of the analysis of vested rights, remains true for purposes of the analysis in the present case.[14]
The facts of the present case do not excuse obeisance to the underlying purpose of the ground rent nor the proper analytical framework for vested rights in a ground rent lease situation. The underlying purpose of the ground rent, from the viewpoint of the ground rent leaseholder, never has been limited exclusively to securing the payment, in perpetuity, of rent. The origins of the ground lease system in this State stemmed from the idea that “[t]here was thus a speculation in these peculiar leases, which, no doubt, added zest to the bargain on both sides.”[15] Mayer, supra, at 45. The main objects of the lessor in making a ground lease are “[1] the inducement thereby offered to improvement, and [2] the security and receipt of a clear annual rent and the fine for renewal ..., [3] based upon the full recognition of the reversionary estate in the lessor and those who may claim under him.... ” Id. at 87. Maryland lawyers at that time considered “[t]he common law lease, in which the reversion remained in the landowner and his tenure of the proprietary was not interfered with ... as the form best adapted to accomplish their purpose.” Id. at 46-47 (emphasis added). “In fact, it is a question whether the landed proprietors could have secured their object in any other way.” Id. at 47.
*210 Because the Bar at the time of the origin of the Maryland ground lease system established that the “common law lease, in which the reversion remained in the landowner and his tenure of the proprietary was not interfered with” was the best way to accomplish their purpose, it was established firmly that the reversionary interest was intertwined with the rent owed. See id. at 62 (“The rent reserved on a term is always incident to the reversion and follows it, as an incident follows its principal.”). “The reversion being in fee simple, to its incident the rent, are consequently attached all the qualities of fee simple property.” Id. Accordingly, “[i]t follows that the estate of the lessor is subject exclusively to the law that governs the realty. The rent passes with the reversion by descent to the lessor’s heirs at law, or goes to his devisees.” Id. at 63. Similarly, the right of re-entry passes by descent to the lessor’s heirs at law, or goes to the devisees as well. This intertwined nature of the lessor’s rights (collectively, “the reversionary interest”)[16] is the essence of the ground lease system. See id.
Accordingly, considering a ground lease, we review the estate of the lessor as a unitary object because of the strength of the interconnection between the rents and the reversionary interests (the reversion and the right to re-entry). To sever the bundle of the lessor’s rights into pieces ignores the very nature of the ground lease system in this State.
*211 (b) The Proper Vested Rights Analysis
The special interest at the heart of this case is the right to re-enter and take possession in the event of default (which is one of the two rights bundled as the lessor’s reversionary-interest in the Maryland ground rent). The State contends, however, that no right is lost because ejectment and re-entry are merely remedies to enforce rent payments and the landlord’s reversionary interest remains intact in the replacement of these remedies with the foreclosure-and-lien remedy in Chapter 286. We disagree with much of the State’s arguments regarding the nature of the implicated right in the context of the ground lease system in this State. Particularly, we disagree with labeling the right of reentry as a remedy that the Legislature may switch-out in a ground lease, and with the State’s conclusion that the right is not vested, despite being part of the bundle of rights essential to the nature of these leases.
Understanding the nature of a “right of entry” can be confusing; thus, we pause to review the nature of this strand of the helix that is the bundle of rights. See 1 John A. Borron, Simes & Smith, The Law of Future Interests 267 n. 1 (Borron ed., 3d ed. 2002) (“Confusion of terminology is rampant in this area of the law [concerning the “right of entry subject to condition broken” and the “possibility of reverter”] and great care must be exercised in dealing with judicial utterances in which distinctions are obliterated by careless use of words.”). Although some treatises may use “possibility of reverter” as a synonym for a “right of entry,” the appellate courts in this State have taken care to distinguish these rights due to the differing legal distinctions and consequences flowing from their effects. See, e.g., Arthur E. Selnick Assocs., Inc. v. Howard Cnty. Md., 206 Md.App. 667, 695-96, 51 A.3d 76, 93, cert. denied, 429 Md. 529, 56 A.3d 1241 (2012).
The significance of the distinction is in the legal consequences of the rights.
[T]he right of entry is frequently called a “possibility of reverter” even by courts which discriminate carefully be *212 tween the legal consequences of the trae possibility of a reverter (an interest which automatically revests in possession) and the right of entry (which becomes possessory only after an election). Of course, confusion is inevitable when a court refuses to recognize any distinction between the two.
Borron, supra, at 267 n. 1 (citation omitted). See also The Knights & Ladies of Samaria v. Bd. of Educ. of Charles Cnty., 113 Md.App. 656, 665 n. 4, 688 A.2d 933, 937 n. 4 (1997) (labeling this distinction between possibilities of reverter and rights of entry as “sharp” and “crucial”). Borron explained further:
Strictly speaking, under the Hohfeldian terminology,[17] the interest here considered would constitute a “power” and not *213 a “right,” for by a right, in the strict sense, is meant a claim which may be presently enforced. Until the owner of a right of entry affirmatively elects to forfeit her breach of the condition, there is no such present right of enforcement. Thus, suppose A conveys to B in fee upon the express condition that if B or his successors should ever sell intoxicating liquor on the premises, the grantor may reenter and forfeit the estate. Even though the condition is broken, unless A elects to forfeit the estate, he cannot sue B to recover possession. His election to forfeit will change his future interest to a present interest, and may fairly be regarded as the exercise of a power. Until such power is exercised, he has no technical “right”. It is for this reason, primarily, that the Restatement of Property has termed the interest a “power of termination.” (2 Restatement, Property (1936) § 155.)
Borron, supra, at 267 n. 1. See also 16 A.L.R.2d 1246 (Originally published in 1951) (“This right of re-entry is not a reversion, a possibility of reversion, or an estate in land, but is a mere right or chose in action — a right or power to terminate the estate of the grantee and retake the same if there is a breach of condition — and if it is enforced, the grantor would be in by the failure of the condition and not by a reverter.”) (citing 33 Am Jur, Life Estates, Remainders, and Reversions, §§ 204, 205, 207, 208). Because of the important distinction in the legal consequences of these rights, we use the term “right of re-entry” here.
*214 The State characterizes improperly the “right of reentry” as synonymous, or closely thereto, with ejectment (labeled by the State as “re-entry through ejectment”) and classifies both as remedies. Black’s Dictionary defines a “remedy” as “[t]he means of enforcing a right or preventing or redressing a wrong; legal or equitable relief.” Black’s Dictionary 1320 (8th ed. 2004). In other words, “ ‘[a] remedy is anything a court can do for a litigant who has been wronged or is about to be wronged.’ ” Id. (quoting Douglas Laycock, Modern American Remedies 1 (3d ed. 2002)). The right of reentry is not a remedy, but is understood more properly as the right to pursue a provided remedy, such as ejectment, to terminate the leasehold interest and recover rents due prior to the termination. This distinction is pivotal in a proper analysis. The State argues that the substitution of the foreclosure- and-lien remedy in lieu of the “re-entry through ejectment” is constitutional because the substituted remedy achieves the same purposes as its deceased predecessor. The proper question rather is whether the foreclosure-and-lien remedy provides an adequate remedy to replace ejectment as the current remedy for a ground leaseholder to enforce the right of re-entry. If the foreclosure-and-lien remedy is not an adequate replacement, then the analysis turns on whether the right of re-entry is vested.
We conclude that the foreclosure-and-lien remedy of Chapter 286 does not provide the same safeguards for leaseholders as the prior ejectment remedy did. Under ejectment, the remedy for the right of re-entry in ground rent leases prior to 2007, the right of present possession is returned to the ground leaseholder, terminating the ground lease such that the holder owned the property in fee simple (and not subject to any lease), and provided the ground leaseholder (now owner in fee simple) the ability also to recover rents due prior to the termination of the lease. Under Chapter 286’s foreclosure- and-lien remedy, the ground leaseholder is not able to seek any judicial remedy to terminate the lease such that he could regain the right to present possession of the property.
*215 Some may argue that this “slight” distinction is tolerable because the sole purpose of the conveyance of a ground rent lease (and of the right to re-entry), from the viewpoint of the landlord, is to secure payments of rent. Admittedly, the right of re-entry is described often as intending to secure payments of rent.[18] Although it may serve as security for the payment of rent, that purpose is not the only one it serves. It serves as a means of terminating the lease as well. As Professor Bordwell stated aptly in his article Seisin and Disseisin,
As long, however, as right of entry remained a technical term of the land law, what gave it vitality was that it was something more than its name implied. Just as recovery in ejectment meant little unless the recoveror had some right *216 or interest in the land which entitled him to hold the land after the recovery, so the right of entry meant little in itself. What gave it vitality was the title or interest, the right of property, back of the right to enter and which would be realized in possession by the entry. Right of entry was therefore not properly a mere right to recover the land. It was a right to enter and to enjoy such right of property as the holder had. It was right of entry plus right of property.
Percy Bordwell, Seisin and Disseisin, 34 Harv. L.Rev. 592, 609 (1921) (emphasis added) (footnotes omitted). Permitting the extinguishment of the right of re-entry changes the very essence of these transactions in this State from a lease subject to rent into a conveyance subject to rent, a label that this Court rejected previously.[19] Accordingly, the foreclosure-and-lien remedy cannot replace effectively the ejectment remedy which is essential for the right of re-entry in Maryland ground rents. Thus, Chapter 286 cannot survive constitutional scrutiny because the right of re-entry is vested in ground rents entered prior to its enactment.
Due to the unique nature of the property rights invested in ground rent leases,[20] where the ground leaseholder’s rights *217 are bundled, the right of re-entry is vested. In mindful ignorance of clear, strong language describing this unique property interest, the State seeks to separate the ground leaseholder’s rights for purposes of its vested rights analysis and concludes that Chapter 286 does not impinge impermissi-bly on any vested right. It imagines that, because the right of re-entry is a remedy, it is not a vested right, and thus not subject to the heightened protections we contemplated in Muskin and Dim. This view fails, however, to recognize the unique nature of the right of re-entry in the ground rent lease system in this State as being inseparable from the vested rights of reversion and to collect rent. As discussed earlier, the right of re-entry is part of the bundle of rights, which is essential to the nature of ground rent leases. When viewing that right under the proper analytical framework, this case becomes rather straightforward. The right of re-entry is vested and, thus, Chapter 286 impinges unconstitutionally on it.
JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS TO BE PAID BY THE STATE OF MARYLAND.
ADKINS and WATTS, JJ., dissent.

. Chapter 290 of the Laws of 2007 was the centerpiece of our decision in Muskin v. State Dep’t of Assessments & Taxation, 422 Md. 544, 30 *196 A.3d 962 (2011). Chapter 286 of the Laws of 2007, another enactment regarding the ground rent system from the same legislative session from which Chapter 290 emerged, is the focus of this follow-on litigation.

. We exercised our by-pass jurisdiction, pursuant to § 12-203 of the Courts and Judicial Proceedings Article of the Maryland Code (1973, 2013 Repl. Vol.).

. The clauses at issue are sometimes referred to as "forfeiture clauses.’’

. We shall hereinafter sometimes refer to Appellees as "the Class.”

. When referring to previous iterations of the Maryland Code, we will use the long-form citation with reference to the relevant year.

. "Ejectment” is a process that allows a landlord (in this case the ground lease holder) to re-enter the property after a tenant’s default, and retake possession, ejecting the tenant. See RP § 8-402.2(a) (discussed in more depth infra).

. We explain in depth the lien-and-foreclosure process created by Chapter 286 infra. Shortly put, this process replaced ejectment with a lien-and-foreclosure sale. The lien receives priority from the date the ground lease was created. The debt is paid from the proceeds of the sale. If the ground lease is redeemable, the redemption amount is deducted also from the proceeds of the sale. If the ground lease is irredeemable, the foreclosure buyer takes subject to the ground lease. RP § 8-402.3(d).

. The Circuit Court certified later this case as a class-action.

. The Code specifies how much the tenant must pay to redeem the ground lease and convert their interest into a fee simple absolute:
(2) The reversion is redeemable:
(i) For a sum equal to the annual rent reserved multiplied by:
1. 25, which is capitalization at 4 percent, if the lease was executed from April 8, 1884 to April 5, 1888, both inclusive;
2. 8.33, which is capitalization at 12 percent, if the lease was or is created after July 1, 1982; or
3. 16.66, which is capitalization at 6 percent, if the lease was created at any other time;
(ii) For a lesser sum if specified in the lease; or
(iii) For a sum to which the parties may agree at the time of redemption.
RP § 8-110(b)(2) (1974, 2010 Repl. Vol.).

. Notice was required not only to the tenant, but also to each mortgagee of the lease who recorded in the land records a request for notice of judgment. RP § 8-402.2(b).

. If at any point during the action, the tenant paid the back rent, the action terminated. Md.Code (1974, 2003 Repl. Vol.) § 8-402.2(d) of the Real Property Article.

. The foreclosure occurs “in the same manner and subject to the same requirements as the foreclosure of a mortgage or deed of trust containing neither a power of sale nor an assent to decree.” RP § 8-402.4(n).

. This Court explained in Muskin that
[sjtatutes have been found unconstitutional under the Maryland Declaration of Rights and Constitution for violating due process, the takings clause, or both. We said in Dua v. Comcast Cable of Md., 370 Md. 604, 630, 805 A.2d 1061, 1076 (2002), a "statute having the effect of abrogating a vested property right, and not providing for compensation, does 'authorize private property, to be taken ..., without just compensation’ (Article III, § 40). Concomitantly, such a statute results in a person or entity being ‘deprived of his ... property’ contrary to ‘the law of the land’ (Article 24).”
Muskin, 422 Md. at 557 n. 8, 30 A.3d at 969 n. 8.

. In Muskin, we noted that “[e]ven if [the rights in the ground lease] were analyzed separately, to determine one right is vested is to find Chapter 290’s extinguishment scheme flawed fatally.” Muskin, 422 Md. at 560 n. 9, 30 A.3d at 971 n. 9. That statement was provided in a footnote as an alternative to support the ultimate conclusion in that case. The statement does not negate the basis of the analysis which is supported by the historical development of the ground rent system in this State and which demands that the bundle of vested rights for the ground rent owner, provided by a ground rent lease, “cannot be separated one from the other.” Id. at 559, 30 A.3d at 971 (emphasis added).

. Although this exact quotation refers to perpetual leases in Ireland, this same notion rings true as well for the origins of Maryland ground rent leases.

. The State interprets our Muskin decision as setting forth two rights in the bundle of vested rights: (1) the reversionary interest (which, under the State’s view, means solely a reversion), and (2) the right to receive rent payments. This contention misinterprets Muskin and the common understanding of "reversionary interest.” In Muskin, we used the term “reversionary interest” as collectively referring to two distinct, intertwined rights (the reversion and the right to re-entry). Muskin, 422 Md. at 559, 30 A.3d at 971 ("A ground rent lease creates a bundle of vested rights for the ground rent owner, [1] a contractual right to receive ground rent payments and [2] the reversionary interest to reenter the property in the event of a default or if the leaseholder fails to renew.”) (emphasis added). Moreover, the definition of a "reversionary interest” is not limited to a "reversion,” but rather a reversion is a type of a reversionary interest.

. “Hohfeldian terminology" refers to the influential contribution of Professor Wesley Newcomb Hohfeld to analytical jurisprudence in the science of law. Of importance here is Hohfeld’s scheme in which "he set forth eight fundamental conceptions in terms of which he believed all legal problems could be stated.” Walter Wheeler Cook, Introduction to Wesley Newcomb Hohfeld, Fundamental Legal Conceptions As Applied in Judicial Reasoning and Other Legal Essays, at 5 (Walter Wheeler Cook, ed., Yale University Press 1919). He arranges them in the following scheme:
Jural Opposites right privilege power immunity
no-right duty disability liability
Jural Correlatives right privilege power immunity
duty no-right liability disability
Id. "With the clear recognition that the same term is being used to represent four distinct legal conceptions comes the conviction that if we are to be sure of our logic we must adopt and consistently use a terminology adequate to express the distinctions involved.” Id. at 6. According to Professor Hohfeld, “the tendency — and the fallacy — has been to treat the specific problem [of fundamental conceptions] as if it were far less complex than it really is; and this commendable effort to treat as simple that which is really complex has, it is believed, furnished a serious obstacle to the clear understanding, the orderly statement, and the correct solution of legal problems." Wesley Newcomb Hoh-feld, Some Fundamental Legal Conceptions as Applied in Judicial Reasoning, 23 Yale L.J. 16 (1913), reprinted in Wesley Newcomb Hohfeld, Fundamental ILegal Conceptions As Applied in Judicial Reasoning and Other Legal Essays, 26 (Walter Wheeler Cook, ed., Yale University Press 1919). Instead, according to Professor Hohfeld, "the right kind of simplicity can result only from more searching and more discriminating analysis.” Id.
In the context of Maryland ground rent leases, what we refer to as a "right of reentry” is not a "right" under Hohfeldian terminology, but *213 rather is a “power” and a "privilege.” In discussing the nature of the “right of entry,” Professor Hohfeld explains,
in the case of a conveyance of land in fee simple subject to condition subsequent, after the condition has been performed, the original grantor is commonly said to have a “right of entry.” If, however, the problem is analyzed, it will be seen that, as of primary importance, the grantor has two legal quantities, (1) the privilege of entering, and (2) the power, by means of such entry, to divest the estate of the grantee. The latter’s estate endures, subject to the correlative liability of being divested, until such power is actually exercised.
Id. at 55.

. Such a description, however, is criticized just as often for failing to include the other important aspect of the right of re-entry. For example, a Washington Practice of Real Estate treatise, in discussing the traditional term "right of entry,” explained,
Traditionally the right of entry has been treated as one of the reversionary future estates. However, the Restatement of Property and some writers influenced by it using the phrase "power of termination” and classified it as an "interest” rather than as a "right” or an “estate.” [See Restatement ol' Property §§ 24, 155 (1936); W. Stoebuck & D. Whitman, Law of Property, § 3.5 (3d ed. 2000); L. Simes, Future Interests (Hornbook) § 14 (2d ed. 1966). But 1 L. Simes & A. Smith, Future Interests § 241 (2d ed. 1956), which was published after Sime's original Hornbook, uses the phrase "right of entry.”] The traditional terminology will be used here, first, because most courts seem to use and act upon it. Also, if the grantor has only a power to terminate the estate he has granted, as the Restatement says, while this explains the mechanism by which that estate ends, it does not explain how the grantor is restored to an estate.
17 Wash. Prac., Real Estate § 1.17 (2d ed.) (emphasis added). The treatise explained further,
The Restatement [of Property cited above] takes the position that the “power of termination” is not a power of appointment. If it were, that would explain how the grantor could appoint an estate to himself. But if he has only a power to terminate, how does he get any estate, unless he did indeed retain an estate, which the Restatement also denies. What would a bare power to terminate produce? An escheat to the state?
Id. § 1.17 n. 3. The State here falls prey apparently to this misleading nature of the term "power to terminate” and “right to re-enter” in concluding that the foreclosure-and-lien remedy is an adequate replacement for the remedy of ejectment.

. - Were we analyzing ground rent leases in Pennsylvania, we might agree more easily with the State’s contention. In Pennsylvania, the ground rent lease is considered a land conveyance subject to rent payments. See generally Richard M. Cadwalader, A Practical Treatise on the Law of Ground Rents in Pennsylvania (Kay & Brothers ed., 1879). In contrast, though, in Maryland, the ground rent system is considered a lease subject to condition for rent payments. See generally W. Calvin Chesnut, The Effect of Quia Emptores on Pennsylvania and Maryland Ground Rents, 91 U. Penn. L.Rev. 137 (1942) (discussing the difference between the two States’ ground rent systems). This distinction has significant effects in multiple areas of the law. See, e.g., H.H. Walker Lewis, The Taxation of Maryland Ground Rents, 3 U. Md. L.Rev. 314, 335-36 (discussing the different effects in taxation resulting from the distinction between the Pennsylvania ground rent lease and its counterpart in Maryland).

. Ground rent leases in this State are unique and so unusual (like an unattractive unicorn) that it is widely recognized that "[rjecourse to the legal encyclopedias is almost hopeless.” Lewis, supra, at 314. The problem with referring to generalized statements in legal encyclopedias for purposes of analyzing ground rent leases in this State is that "[t]he *217 encyclopedias fail adequately to distinguish the Maryland variety of ground rents from their cousins in Pennsylvania and elsewhere and are replete with generalities and citations which prove erroneous when applied to our own local product.” Id. at 314 n. 2. Thus, rather than refer to generalized statements in legal encyclopedias, we rely on secondary sources and cases discussing this unique ‘‘mysterious being," referred to by Judge Kaufman as the "ground rent animal.” Frank A. Kaufman, The Ground Rent-Mysterious but Beneficial, 5 U. Md. L.Rev. 1, 1, 2 (1940). See also id. at 72 (recognizing that the unique nature of Maryland ground rent leases stems from the fact that "the exact form of the present Maryland system 'just sort of evolved by accident”).