REPORTED
IN THE COURT OF SPECIAL APPEALS
OF MARYLAND
No. 1607
September Term, 2014

JOYCE E. SIZEMORE, *et al.*

v.

TOWN OF CHESAPEAKE BEACH,
MARYLAND, *et al.*

Nazarian,
Leahy,
Wilner, Alan M.
        (Retired, Specially Assigned)

JJ.

Opinion by Leahy, J.

Filed:  November 25, 2015

Appellants Joyce Sizemore and her daughter Stephanie Sizemore, possessed of the hope and optimism common to those with an entrepreneurial spirit, applied for a zoning permit in April 2000 to construct the "Beef & Reef Restaurant" on their property in the Town of Chesapeake Beach in Calvert County, Maryland. Unfortunately, the Sizemores lacked sufficient resources to fully fund their aspirations for the Beef & Reef.

On October 2, 2003, Joyce Sizemore received her final zoning permit for the restaurant. At the time, the property was zoned for Commercial High-Density ("C-HD") use, which permitted restaurants of the type proposed by the Sizemores. In February 2004, however, Appellee Town of Chesapeake Beach completed a comprehensive rezoning, pursuant to which the Sizemore property was downzoned from C-HD to Residential-Village ("R-V"). Notwithstanding the rezoning, the Sizemores continued in fits and starts with construction of the restaurant under their existing zoning permit. After construction languished for months and then years—and after numerous written warnings—on January 12, 2009, the town zoning administrator revoked the Sizemores' 2003 zoning permit pursuant to the Town Code of Chesapeake Beach ("Town Code") § 290-27(E) (2004),[1] for failure to substantially complete or satisfactorily proceed with construction.

On February 13, 2009, the Sizemores appealed the decision of the zoning administrator to the Town of Chesapeake Beach Board of Zoning Appeals (the "Board"), and, following an adverse decision there and in the Calvert County Circuit Court on their petition for judicial review, the Sizemores abandoned their subsequent appeal to this

---

[1] Adopted as Zoning Ordinance 7-204 on February 19, 2004.

1

Court.[2] Eight months after abandoning their appeal of the 2009 decision to this Court, the Sizemores filed a new permit application for the Beef & Reef on October 3, 2012, which was denied because the R-V zone did not permit restaurants or other commercial establishments. The Sizemores' primary contention in challenging that decision before the Board, was that because of the work they had started, they had a vested right to continue construction of a restaurant on their property. After a full hearing, the Board upheld the zoning administrator's decision to deny the zoning permit in a Resolution issued on December 13, 2013. On petition for judicial review, the Circuit Court for Calvert County affirmed the Resolution of the Board.

The Sizemores present the following questions, which we have reordered:

1) Did the Board err by concluding the Sizemores abandoned their vested right because they were unable to keep the previously issued zoning permit in effect?

2) Did the Board err by not ordering the issuance of a new zoning permit because the Sizemores have a vested right to complete construction and open the restaurant?

3) Did the Board err by deciding the Sizemores "waived" the ability to assert a vested right as the basis for a new zoning permit—needed to finish construction of the restaurant the Sizemores began under a previously issued zoning permit—because the Sizemores did not assert a vested right during the 2009 appeal that challenged cancellation of the previously issued zoning permit?

4) Did the Board err by declining to reconsider its prior decision to uphold cancellation of the previously issued zoning permit when State law, in effect at the time of the Board's 2009 decision, tolled the expiration of

---

[2] The Sizemores' appeal to this Court was dismissed on December 21, 2011, upon the Sizemores' failure to file briefs and record extracts, and following their written request to dismiss the case.

zoning permits (and other land use approvals) because of the financial crisis and recession that began in 2007-2008?[3]

We hold that a vested right to proceed with construction under an existing zoning use may be abandoned pursuant to a statutory provision that establishes reasonable prerequisites for abandonment, or where there is ample evidence of an intent to abandon or relinquish the vested zoning right. Because the Town Code of Chesapeake Beach § 290-27(E)(2) applies to *all permits*, and places reasonable restrictions on the life of a zoning permit, the Sizemores' failure to comply with § 290-27(E)(2) correctly resulted in the expiration of their permit and the abandonment of any vested right in that permit.

It follows that, in 2009, by challenging the determination that the zoning administrator was empowered to revoke the zoning permit under § 290-27(E)(2) for failure to substantially complete or satisfactorily proceed with construction, the Sizemores were challenging the Town's ability to extinguish their vested rights in the C-HD zoning under which construction of their restaurant was permitted. Therefore, we hold the Board did not err in its determination that whether the Sizemores had vested rights in the C-HD zoning was a matter that was "disposed of" in 2009.

---

[3] We note that the Sizemores' first, second, and third questions are exceedingly entangled such that we depart from our normal order of review. While it is generally standard practice to address a waiver issue prior to proceeding to the merits, the necessary predicate to that determination is whether vested rights were at issue in the 2009 hearing. We are thus required to first examine (1) whether the Sizemores had obtained a vested right in their zoning permit, (2) whether vested rights can be abandoned, and (3) whether failure to comply with Town Code of Chesapeake Beach § 290-27(E)(2)—the zoning ordinance at issue in the 2009 hearing—resulted in the abandonment of the Sizemores' vested rights, thereby placing vested rights at issue in the 2009 hearing.

3

Finally, we hold that the Board correctly declined to reconsider its 2009 decision after that decision had been appealed to both the circuit court and this Court and where the "Tolling Bill," 2009 Md. Laws, ch. 334 (SB 958) (codified at Maryland Code (1984, 2009 Repl. Vol.), State Government Article ("SG") §§ 11-201 & -202), abrogated June 30, 2010, was no longer in effect.

We affirm the judgments of the Circuit Court for Calvert County sustaining the Resolution of the Board.

## BACKGROUND

In 1998, Joyce Sizemore purchased a home on a .43 acre lot, located at 8731 C Street in Chesapeake Beach, MD, 20732 (the "Property") for $157,000.00. In April 2000, she filed her first application for a zoning permit to construct a "2 story Takeout Restaurant & Storage w/ Parking Area" on the Property (the "Project"). At the time of the original permit application, the property was zoned for C-HD use. The restaurant and accompanying twenty-car parking lot proposed in the June 2, 2000, site plan for the "Beef & Reef" was a permitted use in the C-HD overlay zone.

The first zoning permit for the Beef & Reef restaurant was approved on January 18, 2001, and was issued as permit No. 4308. However, that permit was contingent on the outcome of a pending appeal brought by Bernard Gibson, one of the Sizemores' neighbors. The appeal was ultimately decided in the Sizemores' favor and, on April 12, 2001, permit No. 4308 was replaced with zoning permit No. 4364. After receiving the April 2001 zoning permit, the Sizemores began obtaining the other required permits for construction of Beef & Reef. On April 17, 2001, the Sizemores received their public water/sewer permit, No.

4

14272.  In November of 2001, the Sizemores received permits for building and grading, No. 15259 and No. 15394, respectively.  However, there is no evidence in the record that any construction occurred on the property prior to October 2003.

**The 2003 Zoning Permit**

For reasons that are not entirely clear from the record, on October 2, 2003, zoning permit No. 5077 replaced the two prior zoning permits.  According to inspection reports, the footings for the building were constructed on October 15, 2003.  The circuit court found, in its August 29, 2014, Findings and Order of Court, that, by February 2004, the building's foundation had been laid.

On February 19, 2004, the Town downzoned the Sizemores' property from C-HD to R-V.  The R-V zone does not permit restaurants or other commercial establishments, such as the proposed Beef & Reef Restaurant.[4]  Additionally, the Town adopted a new provision, Town Code § 290-27(E),[5] in the zoning ordinance, which states in pertinent part:

---

[4] Town Code § 290-9(E) defines the purpose of R-V:

E. R-V Residential Village District. The R-V District is intended to provide pleasant and safe residential uses that are compatible with residential character, and to encourage and facilitate redevelopment and infill that is compatible in use, scale, and impact with residential use and the existing pattern of buildings, streets and blocks.

Per the Town Code, Table 1, Land Use Classifications, restaurants of any kind are not permitted in R-V zones.

[5] The Town Code previously contained § 904, a more narrow provision that stated:

Life of a Permit: Any erection, construction, reconstruction, alteration or moving of a building or other structure, including a sign authorized by a zoning permit shall be commenced, and any change in use of a building or

5

E. Expiration of zoning permit.

* * *

(2) If the work described in any zoning permit has not been substantially completed within two years of the date of issuance, unless work is satisfactorily proceeding thereon, said permit shall expire and be cancelled by the Administrator, and written notice thereof shall be given to the persons affected, together with notice that further work as described in the cancelled permit shall not proceed unless and until a new zoning permit has been obtained.

In September 2004, the Sizemores received permits for plumbing, gas, and electrical work. The record indicates that, by the end of September 2004, the electric slab and plumbing ground rough had been installed and inspected by the county.[6] In late October 2004, the slab and ceiling close-in were inspected. An additional "rough" inspection of the Property was completed on November 1, 2004. From that point, however, the record is unclear as to what, if any, work continued at the site.

On March 23, 2006, the town zoning administrator wrote to Appellant Joyce Sizemore, advising her that the construction was not proceeding in a timely manner as

---

land authorized by a zoning permit shall be undertaken within one (1) year after the date of issuance of the permit. If not, the permit shall be considered null and void.

Town Code § 904 (adopted May 26, 1972).

[6] The building inspection report for the plumbing ground rough dated September 29, 2004, states "No test on system, pipes covered, no plans on site, need plumber to meet on site," followed by a hand written "Ok." This document shows that the plumbing existed and was installed by that date, even though the inspection reports show that these items were not inspected until October 13, 2004, and November 1, 2004.

required and that the zoning permit would expire in October 2006, unless construction resumed. On September 22, 2006, the zoning administrator sent the Sizemores a second warning, stating that the zoning administrator had not observed any work on the property over the summer and that "if work resumes before Friday, October 6th, you will have satisfied the Calvert County Building Code and our Zoning Ordinance." However, the zoning administrator also strongly cautioned the Sizemores, stating that, "if the October deadline passes with no re-starting of the work on the project, your Zoning Permit will expire *and the proposed use will no longer be permitted under the current Zoning*." (Emphasis added).

No action was taken to revoke the Sizemores' zoning permit in 2006 because, as reflected in the Zoning Administrator Staff Report in case No. 2009-1 before the Board, right after the warning letters were sent, "there was noticeable activity on the site, including the sealing and painting of the building exterior." The Sizemores then received confirmation from the Calvert County Division of Inspections & Permits on October 30, 2006, that their building permit would remain in effect until October 1, 2007, or "as long as there is continuous and reasonable progress being made on your project." Notably, this letter also cautioned the Sizemores:

> [A] permit under which work has begun and stopped for any reason shall become null and void one year after the work has stopped. Work will be considered stopped when the builder fails to prosecute the work so as to ensure completion within a reasonable period of time considering the type of construction involved. If one year from []now we feel that work has not continued to progress you will receive written notice from this office and you may be required to re-apply for and obtain a new permit to complete the required work. If this is not accomplished within 90 days of receipt of

7

notification you may be required to remove or demolish the building or structure within 180 days from the date of the written notice.

Subsequent inspection reports show that the plumbing and gas appliances were installed in December 2006. The record does not reveal any construction activities for another year-and-a-half until the next inspection report was issued on March 5, 2008, for inspection of the insulation on the Project. Then, more than a half-year went by until on October 28, 2008, after finding that work had not satisfactorily proceeded, the zoning administrator again wrote to the Sizemores asking them to provide the "developer's 'case' as to why the permit should not be revoked." According to the Zoning Administrator Staff Report, the only response the Sizemores provided was the letter from State Highway Administration ("SHA") regarding SHA's intention to construct the "depressed curb and sidewalk at the proposed entrance location, as a part of the SHA's Streetscape Program." Finding that there had been neither satisfactory progress nor substantial completion of the site plan during the preceding five years, the zoning administrator sent the Sizemores notice by certified mail, on January 12, 2009, that he was revoking Permit No. 5077.[7]

On February 13, 2009, the Sizemores filed an appeal with the Board of Zoning Appeals, asking the Board to reinstate the permit and to allow work to continue. After hearings on April 7 and May 19, 2009, the Board issued its opinion in a Resolution dated

---

[7] The parties failed to include this letter in the record, but it is referenced by the Board of Zoning Appeals in their 2013 opinion, in the memorandum staff report sent from the zoning administrator to the Board of Appeals on April 23, 2013, in the Board of Appeals Zoning Administrator Staff Report, and in a letter from Appellant to Bruce Wahl, the Mayor of Chesapeake Beach, dated September 12, 2011.

8

July 28, 2009, upholding the zoning administrator's revocation of the 2003 zoning permit (No. 5077). Written and oral testimony before the Board evidenced that there had been little activity on the site for five years, many "integral components" of the construction remained incomplete, and that there was no evidence that the Sizemores could have secured or had secured financing to complete the Project. The Board also considered written and oral testimony from several property owners in the vicinity of the Project. A letter from Bernard Gibson, dated March 31, 2009, indicated that the last time Mr. Gibson saw construction activity on the Project site was in October 2004. A letter from Patricia Gibson stated that no detectable progress had been made on the Project in four years. Mr. and Mrs. Alvin Mayo also testified that, to their knowledge, no substantial construction activity had occurred on the Project since February 2006.

The Board found that, based on the evidence presented, the Sizemores failed to comply with Town Code § 290-27(E) by "satisfactorily proceeding" with construction. The Board's Resolution dated July 28, 2009, stated:

> While some work on the Project has been completed, the Board agrees with the statement made by the Zoning Administrator in his January 12, 2009 letter to [the Sizemores] that a substantial amount of work has yet to be completed. Contrary to the provisions of Section [290-27] of the Zoning Ordinance, the work *under the permit* had not been completed within two years of the date of its issuance nor can the Board agree with [the Sizemores] that a satisfactory progress toward completion of the work is being made. Consequently, the Board is without authority to [reverse the decision of the Zoning Administrator].

(Emphasis added).

On August 28, 2009, the Sizemores petitioned for judicial review in the Circuit Court for Calvert County. They filed a memorandum with the circuit court on May 20,

9

2010, and argued that the zoning permit should not have been revoked because, among other reasons, any lack of progress on the Project was due, in part, to the harassment by the Town in helping neighbors to fight the Sizemores both in and out of court. The Sizemores argued, also for the first time, that the amendment to the Town's zoning ordinance should have had a grandfathering provision, and, that under the Tolling Bill, 2009 Md. Laws, ch. 334 (SB 958), their permit should have been tolled until June 30, 2010.

Governor O'Malley approved the Tolling Bill on May 7, 2009, and its effects were made retroactive to January 1, 2008. 2009 Md. Laws, ch. 334 (SB 958). According to the preamble of the bill, the purpose of the Tolling Bill was to toll certain permits issued by the State, or any county or municipality, until June 30, 2010, for the reason that "[t]here exists a state of national recession, which has drastically affected various segments of the Maryland economy, but none as severely as the State's banking, real estate, and construction sectors." *Id.* The Sizemores averred that they learned of the Tolling Bill from a county employee after the Board upheld the zoning administrator's revocation of the 2003 permit (No. 5077). The Sizemores argued before the circuit court that the Tolling Bill should have applied to their permit, which was still active on January 1, 2008, the date to which the Tolling Bill retroactively applied. They maintained that their zoning permit could not have been revoked prior to June 30, 2010, and that the Town was required to give them additional time to complete the Project.

In response to the August 28, 2009, petition for judicial review, Appellees filed a motion to dismiss arguing that the Sizemores failed to file a memorandum of law as

10

required by Maryland Rule 7-207(a). The circuit court held a hearing on July 15, 2010, and, on August 11, 2010, granted the Town's motion to dismiss.

The Sizemores then sought review of the Board's 2009 decision in this Court. That appeal was received and docketed in this Court on February 25, 2011. But, on October 5, 2011, the Sizemores filed a line requesting that their appeal be dismissed.

**The 2012 Zoning Permit Application**

On July 20, 2012, Appellant Stephanie Sizemore wrote to the zoning administrator, asking him to reinstate the 2003 zoning permit, arguing again that it was protected by the Tolling Bill. When that effort proved unfruitful, at some point in 2012, Appellant Stephanie Sizemore again obtained legal representation, and the Sizemores' new counsel, Sager A. Williams, Jr., sent a letter to the zoning administrator dated September 24, 2012, asserting that, "on behalf of [his] client, Ms. Joyce E. Sizemore . . . ," he was applying for "a new Zoning Permit for the Café building and business, which Ms. Sizemore is submitting under the provisions of § 290-27 of the Town's zoning ordinance." The letter also asserted:

> Under the common law and the Town's zoning ordinance . . . revocation of the [2003] Zoning Permit had no effect on [the Sizemores'] previously acquired vested right. Under the common law, [the Sizemores'] vested right remains in effect either until [they] abandon[] the right—which [they] ha[ve] never done—or until the Town pays [them] just compensation for the right—which the Town has never done.

On October 3, 2012, the Sizemores applied for a new zoning permit for the "Beef & Reef Restaurant." In a letter from the zoning administrator, dated February 11, 2013, the Sizemores were notified that their application for a new zoning permit had been denied

11

because "the property at 8731 C Street is zoned Residential Village (RV)" and that a restaurant is not a permitted use in the RV zone.

The Sizemores filed an appeal with the Board on March 11, 2013, arguing that the zoning administrator's February 2013 decision was arbitrary and capricious because the Sizemores had a vested right to continue construction of the restaurant that did not terminate upon cancellation of the 2003 zoning permit. The Sizemores further argued that they did not abandon their vested right because they never had the requisite intent to abandon. The Sizemores asserted that the Tolling Bill prevented them from losing their vested rights and provided an overriding public policy justification for the Board to recognize such vested rights.

In response, the Town argued that the Sizemores had waived both the Tolling Bill and the vested rights arguments by not raising them before the Board in 2009. On May 7, 2013, and August 20, 2013, the Board held hearings on the appeal. In the interim between hearing dates, on May 24, 2013, the Sizemores filed a motion to reconsider requesting that the Board consider the application of the Tolling Bill to the 2009 decision.

In an oral vote taken at the August 20, 2013, hearing, the Board affirmed the zoning administrator's denial of a new permit. In its written opinion, dated December 13, 2013, the Board determined that the tolling law to which the Sizemores referred was approved by the Governor on May 7, 2009, prior to the close of the hearing in Case No. 2009-1 and should have been presented to the Board in that case. Accordingly, because it was not presented then, the Board concluded that the issue had been waived. Regarding the vested rights issue, the Board stated:

12

> [T]he Appellant cannot do indirectly what she cannot do directly; that is, she cannot initiate a new request in hopes of reviving any rights she had or may have had under the prior case.
>
> * * *
>
> The issue of vested rights is an issue that involves the Town and the Appellant regarding the Permit and the Appellant's ability to proceed with construction under the permit; the same parties and the same subject matter before the [Board] in Case No. 2009-1. The matter was disposed of by the [Board] in 2009. Accordingly, the [Board] finds that it need not make a determination with respect to this issue at this time.

The Board explained why the Town was justified in treating the Sizemores' failure to make progress on the construction as an abandonment:

> Appellant's failure to comply with the [Town Code] amounts to a lack of intent to complete the project, which could be interpreted as an abandonment of the project.
>
> * * *
>
> Appellant would have the [Board] find that obtaining vested rights gives one the ability to leave a building partially constructed indefinitely and that the person not be required to comply with Town Code requirements. The [Board] is not persuaded to support such a conclusion.

Additionally, because the property was downzoned to an R-V zone, the Board found that the zoning administrator correctly denied the Sizemores a *new* zoning permit for the Beef & Reef.

On January 13, 2014, the Sizemores filed the underlying petition for judicial review of the Board's 2013 decision in the Circuit Court for Calvert County. After a hearing on August 14, 2014, the circuit court issued its opinion on September, 2, 2014, upholding the

13

Board's decision to deny the Sizemores a new permit and declining to re-open their 2009 opinion. The Sizemores noticed the instant appeal on September, 29, 2014.[8]

## STANDARD OF REVIEW

When an appellate court reviews a decision of an administrative agency, that court must look past the circuit court's decision to review the agency's decision. *Halici v. City of Gaithersburg*, 180 Md. App. 238, 248 (2008) (citing *Anderson v. General Cas. Ins. Co.,* 402 Md. 236, 244 (2007)). This Court must primarily "determine whether the agency's decision is in accordance with the law or whether it is arbitrary, illegal, and capricious." *Md. Dep't of the Env't v. Ives*, 136 Md. App. 581, 585 (2001) (quoting *Gigeous v. Eastern Correctional Institution,* 132 Md. App. 487, 494 (2000)). "In other words, '[w]e apply a limited standard of review and will not disturb an administrative decision on appeal if substantial evidence supports factual findings and no error of law exists.'" *Long Green Valley Ass'n v. Prigel Family Creamery*, 206 Md. App. 264, 274 (2012) (quoting *Tabassi v. Carroll County Dep't of Soc. Servs.,* 182 Md. App. 80, 86 (2008) (citation omitted)).

---

[8] Appellees in the present matter are the Town of Chesapeake Beach, Bruce A. Wahl, Mayor, and Christopher Jubiak, Planning and Zoning Administrator.

14

## I.

## Vested Rights

### A. Establishing a Vested Right

In *Prince George's County, Maryland v. Sunrise Development Ltd. Partnership,* the Court of Appeals held that rights to continue construction after a change in the zoning law vest when (1) the work done is recognizable by a "reasonable member of the public," and (2) construction commenced pursuant to a building permit for a use then permitted under the zoning law. 330 Md. 297, 314 (1993). Stated another way, vested rights are acquired when (1) there is actual physical commencement of some "significant and visible construction," (2) the construction was commenced in "good faith," with the intention to complete the construction, and (3) the construction was commenced "pursuant to a validly issued building permit." *Town of Sykesville v. West Shore Communications, Inc.* 110 Md. App. 300, 305 (1996). Once acquired, a vested right in the permit protects the permit holder from changes to the zoning ordinance that would otherwise disallow the use being constructed. *See id.* at 328 (stating that once an owner obtains a vested right, their "right to complete and use th[e] structure cannot be affected by any subsequent change of the applicable building or zoning regulations." (quoting *Prince George's Cnty. v. Equitable Trust Co.*, 44 Md. App. 272, 278 (1979))).

In the present matter, the Sizemores had a valid building permit when they began construction in October 2003. Per inspection reports included in the record, the footings of the restaurant were completed in October 15, 2003, before the zoning ordinance changed

15

in February 2004. The record on appeal is unclear as to the extent of any additional construction completed by February 2004; however, the August 29, 2014, Findings and Order of the circuit court relates that, by February 2004, the building's foundation had been laid. The operative determination, however, is whether or not a "reasonable member of the public" could recognize that work was done. *Sunrise Dev'p Ltd.*, 330 Md. at 314. Here the record is clear that neighbors knew of the construction and, in fact, appealed the initial zoning permit in 2001, and in 2009, testified before the Board about interim construction activities. The parties do not dispute or even discuss whether the Sizemores possessed "good faith" in commencing construction on the Beef & Reef, and there is no evidence in the record to suggest that the construction was begun with the intent to leave the building incomplete. The correspondence contained in the record proves the Town permitted— actually encouraged—the Sizemores to complete construction of the restaurant after 2004. The Board presumed that the Town took these measures because the Sizemores had a vested right in their zoning permit. Therefore, and because there is not sufficient evidence in the record to demonstrate otherwise, we also presume that the Sizemores had a vested right to continue construction of their restaurant under the 2003 zoning permit after their property was downzoned in 2004.[9]

---

[9] The Sizemores stress in their reply brief that a vested right is obtained from a *building permit*, not a zoning permit. They argue that their building permit remained valid after their zoning permit was revoked, and therefore, they have not lost their vested right. We disagree for two reasons. First, we conclude that, under the legal construct of the ordinances and statutes applicable in this case, a zoning permit is a necessary pre-requisite to obtaining and retaining a valid building permit. Thus, when the zoning permit expires, construction can no longer proceed, rendering the building permit ineffective. *See* Town of Chesapeake Beach, Zoning Permit Application Process, http://www.chesapeake-

**B. Abandonment of Vested Rights**

The Sizemores argue that they did not abandon their vested right to construct a restaurant on their property. They maintain that vested rights in a zoning permit should be treated like rights under a nonconforming use permit, and that the abandonment standard for nonconforming use—in the absence of a statute—requires a finding of intent by the party to abandon the property right.[10] The Sizemores contend that the Board did not find that the Sizemores intended to abandon their vested right and that the failure to comply with Town Code § 290-27(E)(2) alone does not support a finding of the intent to abandon.

Appellees disagree and challenge the proposition that nonconforming use precepts should provide the criteria for abandonment of vested rights. Appellees argue that, *if* the Sizemores had acquired a vested right in continuing construction of the restaurant, it was a

---

beach.md.us/forms_zoningpermit.htm (last visited October 5, 2015); *see also* Calvert County Code, Building Construction- Permits- Requirements for issuance, § 105.4.1 (amended December 17, 2013). Second, the Sizemores failed to demonstrate to the Board (nor is there anything in the record on appeal) that their building permit did not expire, per the letter from the Calvert County Division of Inspections and Permits, after there was no longer "continuous and reasonable progress being made on [the Project]."

[10] Per the Town Code, § 290-28(A), a nonconforming use is "a use of a building or lot that does not conform to a use regulation prescribed by this chapter for the district in which it is located, but which was in existence at the effective date of this chapter, and was lawful at the time it was established." To qualify as a nonconforming use, the use must exist at the time of the enactment of the zoning ordinance, or the date the zoning ordinance became effective. A valid and lawful nonconforming use is established if a property owner can demonstrate that before, and at the time of, the adoption of a new zoning ordinance, the property was being used in a then-lawful manner for a use that, by later legislation, became non-permitted. *Trip Associates, Inc. v. Mayor & City Council of Baltimore*, 392 Md. 563, 573 (2006) (citations omitted). The Sizemores do not argue that they have a nonconforming use, because Beef & Reef has never been "in existence" as a functioning restaurant.

17

"right to proceed under the zoning permit in accordance with the terms of the Town's Zoning Ordinance." Because the Sizemores failed to comply with § 290-27(E)(2) of the Town Code by failing to substantially complete construction or satisfactorily proceed for the two years prior to 2009, Appellees argue that the permit and any vested rights that may have existed were properly revoked by the Board's 2009 decision.

We can find no case in Maryland that addresses whether and how a vested right to continue construction following a downzoning, pursuant to a valid zoning or building permit, may be abandoned. We do find utility in the analogy to nonconforming uses— unfortunately, not to the Sizemores' advantage. Maryland courts have long held that nonconforming uses can be abandoned through a finding of (1) "an intention to abandon or relinquish"; and (2) "some overt act, or some failure to act, which carries the implication that the owner neither claims nor retains any interest in the subject-matter of the abandonment." *Landay v. Board of Zoning Appeals*, 173 Md. 460, 469-70 (1938) (citing 1 C.J.S. Abandonment, 8). Alternatively, where there is a statute that establishes how a nonconforming use may be abandoned, the element of intent of the possessor of the nonconforming use is eliminated as an element of consideration, and the statute prevails. *Canada's Tavern, Inc. v. Town of Glen Echo*, 260 Md. 206, 210-11 (1970) (citations omitted).

Other jurisdictions have drawn from their similar nonconforming use abandonment standards and held that a vested right to continue construction can be abandoned. For example, in New York, vested rights to complete the construction of a structure are obtained where (1) substantial construction has been undertaken, and (2) substantial

18

expenditures are made prior to the effective date of the ordinance. *Putnam Armonk, Inc. v. Town of Southeast*, 52 A.D.2d 10, 14 (N.Y. App. Div., 1976). The Supreme Court, Appellate Division of New York has treated such a vested right as equivalent to a "right to a nonconforming use," which will not be disturbed where enforcement would cause "serious loss" to the owner. *Id.* at 15. In *Putnam Armonk, Inc.*, the New York court concluded that one of the ways such a vested right could be lost is by abandonment and stated:

> [A]bandonment . . . depends upon the concurrence of two factors, namely an intention to abandon and some overt act, or some failure to act, carrying the implication that the owner neither claims nor retains any interest in the subject matter of the abandonment (*see City of Binghamton v. Gartell*, 275 App. Div. 457, 460, 90 N.Y.S.2d 556, 559; Ann. 18 A.L.R.2d 725, s 4, pp. 730-731).

*Id.*; *see also R.C. Enterprises v. Town of Patterson*, 42 A.D. 3d 542, 544 (N.Y. App. Div., 2007) (finding that the petitioner did not have vested rights to develop, and stating, "In any event, the petitioner abandoned its plan to develop Parcel 2 as demonstrated by its failure to act over a period of decades."); *Schoonmaker Homes—John Steinberg, Inc. v. Village of Maybrook*, 178 A.D.2d 722, 725-26 (N.Y. App. Div., 1991) (evaluating the petitioner's vested rights to construct its garden apartment units in accordance with a prior zoning ordinance, and stating, "[l]astly, an owner who has acquired vested rights may be divested of such rights where there is abandonment, recoupment or an overriding benefit to the public to be derived from the enforcement of the amended zoning ordinance."); *202 Developers, Inc. v. Town of Haverstraw*, 175 A.D. 2d 473, 474 (N.Y. App. Div., 1991)

19

(finding that the [developer] abandoned its vested rights, and concluding that the zoning ordinance was "not unconstitutional as applied to plaintiff's property.").

Oregon courts have also treated vested rights to develop property and nonconforming uses similarly when addressing abandonment, even where vested rights to construction under prior zoning law are granted by statute. *See Fountain Village Dev. Co. v. Multnomah County*, 31 P.3d 458, 462 (Or. Ct. App., 2001). The court in *Fountain Village Development Co.* stated:

> Nothing in Oregon's case law or statutes precludes subjecting vested rights to develop property to the same limitations that apply to nonconforming uses generally-and, indeed, as addressed below, not to do so would yield incongruous results. . . . Just as the regulation of existing nonconforming uses is a matter within a county's authorized land use purview, so too is the regulation of vested rights to develop-which are, in effect, inchoate nonconforming uses.

*Id.* Accordingly, the Oregon court held that a vested right to develop property or an unfinished use property right was not immune to discontinuance or abandonment under the regulations controlling nonconforming uses. *Id.* at 463.

We agree with our sister states that a vested right to continue construction under an existing zoning or building permit is sufficiently analogous to a nonconforming use to warrant similar treatment. Indeed, the policy arguments that support allowing a nonconforming use to be abandoned apply with equal force to vested rights to continue construction where there has been a zoning change.

In *Trip Associates, Inc. v. Mayor & City Council of Baltimore*, the Court of Appeals stated that "[a] valid and lawful nonconforming use is established if a property owner can

20

demonstrate that, before and at the time of the adoption of a new zoning ordinance, the property was being used in a then-lawful manner for a use that, by later legislation, became non-permitted." 392 Md. 563, 573 (2006) (citing *Chayt v. Board of Zoning Appeals of Baltimore City,* 177 Md. 426, 434 (1939)). In that case, the Court of Appeals reiterated that "'[t]he earnest aim and ultimate purpose of zoning was and is to reduce nonconformance to conformance as speedily as possible with due regard to the legitimate interests of all concerned.'" *Id.* at 574 (quoting *Grant v. Mayor and City Council of Baltimore,* 212 Md. 301, 307 (1957)).

The courts of Maryland have recognized that a property owner may "obtain a vested right in an existing zoning use that will be protected against a subsequent change in a zoning ordinance prohibiting that use." *Sunrise Dev. Ltd.*, 330 Md. at 307 (quoting *O'Donnell v. Bassler*, 289 Md. 501, 508 (1981) (citations omitted)). A vested right to continue construction under a zoning permit presupposes a change in zoning and, thus, renders the permitted use analogous to a nonconforming use under the new zoning (or as the Court of Appeals of Oregon characterized it, an "inchoate nonconforming use[]"). *Fountain Village Development Co.*, 31 P.3d at 462. Where our case law instructs that a nonconforming use is disfavored, *see, e.g.*, *Trip Associates, Inc.*, 392 Md. at 573, an abandoned construction site that does not comport with current zoning ordinances would be similarly disfavored. *Cf. Grant*, 212 Md. at 308 ("Indeed, there is a general agreement that the fundamental problem facing zoning is the inability to eliminate the nonconforming use.").

21

Moreover, nothing in Maryland's statutes or case law precludes the deduction that vested rights can be abandoned. *Ross v. Montgomery County*, was a case in which the Court of Appeals considered whether construction of a hotel had timely begun under a building permit that was validly issued, but which lapsed according to the provisions of the Montgomery County Code prior to commencement of the construction. 252 Md. 497, 502 (1969). The Court found that the property owners, who had not begun good faith construction, had not acquired a vested right. In that case, the appellants contended that, through their expenditures on planning their project, they had acquired vested rights connected with their building permit that entitled them to continue construction despite the law invalidating their building permit for failure to proceed with construction. *Id.* at 501. The Court ultimately determined that, despite those expenditures in anticipation of construction, "there was nothing spent in good faith on construction" and the appellants had not acquired vested rights in either the hotel zoning classification or under the building permit. *Id.* at 504. Although the Court noted that "this [wa]s not a situation where a valid and subsisting permit has been revoked by operation of an ordinance which effected a rezoning repugnant to the use for which the permit had been issued," the Court also stated that "the permit . . . expired for want of performance, and with that expiration any vested right, which may have existed, became forfeit." *Id.* at 507. Thus, the Court of Appeals has recognized, in dicta, that a vested right in a permit may expire for want of performance.

Accordingly, we hold that a vested right to proceed with construction under an existing zoning use may be abandoned pursuant to a statutory provision that establishes reasonable prerequisites for abandonment, or where there is ample evidence of an intent to

22

abandon or relinquish the vested zoning right.  Evidence of an intent to abandon must include some overt act or failure to act indicating that "the owner neither claims nor retains any interest in the subject-matter" of the vested zoning permit.  *Cf. Canada's Tavern, Inc.*, *supra*, 260 Md. 206, 210; *Landay, supra*, 173 Md. at 469-70.

Whether a zoning statute that permits the abandonment or termination of a vested right is reasonable will depend on the circumstances.  In *Amereihn v. Kotras*, the Court of Appeals made clear that where a property is utilized for a permitted use and, thereafter, a "zoning regulation would have the effect of confiscating such property and destroying a vested right therein of the owner," the vested right in the nonconforming use is entitled to constitutional protection.  194 Md. 591, 601 (1950).[11]  Indeed, the Court of Appeals has recognized that "[e]very zoning ordinance impairs some vested rights because it affects property owned at its effective date."  *Grant*, 212 Md. at 314.  Nonetheless, "zoning in general is a valid exercise of the police power of the State, and . . . a comprehensive zoning ordinance is constitutional."  *Colati v. Jirout*, 186 Md. 652, 657 (1946).  Further, the Court

---

[11] In the present case, unlike the property owner in *Amereihn v. Kotras*, 194 Md. 591 (1950), the Sizemores had not completed the construction and put the property to use for a permitted use in the prior zoning.  However, this Court has recognized that the vested rights doctrine has a constitutional foundation.  *Town of Sykesville v. W. Shore Commc'ns, Inc.*, 110 Md. App. 300, 316 (1996) (citing *Richmond Corp. v. Bd. of County Comm'rs,* 254 Md. 244, 255-56 (1969); *Prince George's Cnty. v. Equitable Trust Co.,* 44 Md.App. 272, 278 (1979)).

in *Grant* recognized the need for the exercise of the police power in zoning for "the protection of the 'public safety and welfare' . . . against disease, fire, traffic or lawlessness, [and] it may properly extend 'to the maintenance of conditions under which people may live and work in reasonable comfort and without unnecessary impairment of their physical and mental vigor.'" 212 Md. at 314 (quoting *Jack Lewis, Inc., v. Mayor and City Council of Baltimore*, 164 Md. 146, 153 (1933)).

In *Grant v. Mayor & City Council of Baltimore*, in the context of the amortization of a nonconforming use, the Court observed that where "an ordinance that restricts future uses [or] . . . requires existing uses to stop after a reasonable time . . . constitutionality depends on overall reasonableness, on the importance of the public gain in relation to the private loss." 212 Md. at 315. In that case, the Court held that an amortization period of five years to remove nonconforming billboards was valid, and that a five-year period was not an arbitrary time period. 212 Md. at 316, 129 A.2d at 370. Citing to *Grant*, the Court of Appeals in *Trip Associates, Inc.*, stated that "[a] nonconforming use may be reduced to conformance or eliminated in two ways: by 'amortization,' that is, requiring its termination over a reasonable period of time, and by 'abandonment,' *i.e.* non-use for a specific of time." 392 Md. at 575. The Court therein concluded that "[s]o long as it provides for a reasonable relationship between the amortization and the nature of the nonconforming use, an ordinance prescribing such amortization is not unconstitutional." *Id.* at 575-76 (citing *Gough v. Board of Zoning Appeals for Calvert County,* 21 Md. App. 697, 704-705 (1974)). Additionally, "[t]he constitutionality of zoning ordinances 'amortizing' non-conforming uses by compelling their termination after a reasonable and appropriate specified time is

24

firmly established in Maryland." *Gough*, 21 Md. App. 697, 704-05 (1974) (citations omitted).

Where "the earnest aim" of zoning is to achieve "conformance as speedily as possible with due regard to the legitimate interests of all concerned" and in the interest of public welfare, *Grant,* 212 Md. at 307, local ordinances or regulations that impact or terminate a once-permitted use may be upheld so long as they do not represent an arbitrary or unreasonable exercise of governmental power. *See, e.g.*, *Colati,* 186 Md. at 655 (concluding that a Baltimore City Zoning Ordinance prohibiting the expansion of a non-conforming use was not an arbitrary or unreasonable exercise of governmental power).[12] Certainly, the reasonableness of a given statute will depend on the relevant circumstances.

---

[12] The instant case, involving a vested right to continue construction and the application of Town Code § 290-27, is notably different from those cases that address the constitutionality of a statute abrogating vested rights retroactively. For example, in both *Muskin v. State Department of Assessments & Taxation*, 422 Md. 544 (2011), and *State v. Goldberg,* 437 Md. 191 (2014), the vested rights at issue were those relating to ground rent leases, and the statutes abrogating those rights were found to have had retroactive application. Specifically, *Muskin* addressed the "contractual right to receive ground rent payments and the reversionary interest to re-enter the property in the event of a default," 422 Md. at 559-60, and *Goldberg* addressed a ground lease holder's right to pursue ejectment as a remedy, 437 Md. at 198. The Court of Appeals relied on its decision in *Dua v. Comcast Cable of Maryland, Inc.,* 370 Md. 604, 622 (2002), establishing that the Constitution of Maryland generally prohibits legislation that retroactively abrogates vested rights. *Muskin*, 422 Md. at 556-57, *Goldberg* 437 Md. 205. In *Goldberg,* the Court held the statute retrospectively impermissibly impaired the right to re-entry in the event of default. 437 Md. at 207. In *Muskin*, the Court found that the extinguishment and transfer provisions cut off all remedies and impermissibly divested the contractual vested rights of ground rent owners. 422 Md. at 563.

Here, in the context of vested rights in a prior zoning, where the applicable body of law has developed around preventing the automatic abrogation of a vested right upon re-zoning (the very protection sought in prohibiting retroactive application generally), the

25

As applied, such a statute must allow reasonable and appropriate time for the completion of a construction project, taking into account the nature of the project and the prior zoning. *Cf. Trip Associates, Inc.*, 392 Md. at 575-76; *Gough*, 392 Md. at 575. The reasonableness of the statute (balancing the public gain and the private loss), s*ee Grant*, 212 Md. at 315, also depends on whether the applicable zoning framework affords the permit holder notice of revocation that allows an opportunity to respond. *Cf. John Deere Const. & Forestry Co. v. Reliable Tractor, Inc.*, 406 Md. 139, 147-48 (2008) (in determining whether a statute was applied retroactively, the Court of Appeals adopted the analysis from *Landgraf v. USI Film Products,* 511 U.S. 244, 270 (1994), which involved a "process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event[,]" and determined that the "factors to be considered are 'fair notice, reasonable reliance, and settled expectations.'").

## C. The Sizemores Abandoned Their Vested Right in the 2003 Zoning Permit

The Sizemores argue that they obtained a vested right to continue construction under the 2003 zoning permit in 2004 when the zoning change took effect, and that their vested right survived the revocation of that permit under § 290-27(E)(2). The Sizemores assert

---

retroactivity analysis of *Muskin* and *Goldberg* is not applicable. Indeed, the statute at issue in this case was not applied retroactively to abrogate the Sizemores' vested right. Rather, the Sizemores were able to continue construction under their vested right for a period of years despite the comprehensive rezoning. It was their subsequent abandonment of the project pursuant to § 290-27(E)(2)—and not retroactive application of the zoning ordinance—that extinguished their zoning permit and rights thereunder.

that their vested right cannot be abandoned without a finding that they intentionally abandoned their property right, as was required in *Landay* for abandonment of a nonconforming use. Because the Sizemores claim that they never stopped pursuing financing to complete construction, they argue they never demonstrated intent to abandon their vested right. Therefore, the Sizemores assert that their vested right to construct a restaurant on their property requires the Town to issue a new permit per their October 3, 2012, permit application, even though their proposed use has not been a permissible use under the existing R-V zoning since 2004.

Appellees argue that the Sizemores lost any vested right they may have had to continue construction when they failed to comply with Town Code § 290-27(E)(2). Appellees assert that the requirement to "substantially proceed" with construction is the standard to avoid revocation of any vested right in a zoning permit provided under the zoning ordinance.

Certainly, the key principle that a vested right generally protects the permit holder from changes to the zoning ordinance, *see Town of Sykesville*, 110 Md. App. at 328, was applied in the present case. When the Sizemores' property was downzoned in 2004 from commercial to residential, the Sizemores did not lose their right to continue constructing their restaurant. As the Board recognized in its resolution:

> [T]he Town provided the Appellant ample opportunity after the 2004 rezoning of the Property to comply with the provisions of the Town Code. In fact, the Town worked with the Appellant for well over four years before it revoked the [2003] Permit, giving her notice every step of the way that she had to comply with the requirements or the permit would be revoked. Appellant failed to comply with the requests as set forth in the Town's notices.

27

Indeed, it was the Sizemores' subsequent failure to comply with the reasonable requirements of § 290-27(E)(2) that was fatal to both the 2003 zoning permit and any vested right in that permit.

As discussed, *supra*, a vested right in a zoning permit may be abandoned where the zoning ordinance (or statute) itself reasonably establishes the circumstances that amount to abandonment and the permit holder's failure to act indicates that they no longer retain an interest in the subject-matter of the zoning permit. Certainly, municipalities have the power to regulate zoning and property rights when those regulations are established for the health, safety, and welfare of the public. *See Carney v. City of Baltimore*, 201 Md. 130, 134-35 (1952). Here, Town Code § 290-27(E) provides:

E. Expiration of zoning permit.

(1) If the work described in any zoning permit has not begun within one year from the date of issuance thereof, said permit shall expire, it shall be cancelled by the Administrator, and written notice thereof shall be given to the persons affected.

(2) If the work described *in any zoning permit* has not been substantially completed within two years of the date of issuance, *unless work is satisfactorily proceeding thereon, said permit shall expire and be cancelled by the Administrator*, and written notice thereof shall be given to the persons affected, together with notice that further work as described in the cancelled permit shall not proceed unless and until a new zoning permit has been obtained.

(Emphasis added). By its language, § 290-27(E)(2) applies to *all permits*, whether or not a vested right exists to support the permit. Failure to comply with the statute results in expiration and cancellation of any zoning permit. It is reasonable because even those projects that require more than two years to complete, are able to proceed without a cutoff

28

date, so long as work is proceeding on the project. We observe that on its face, the notice provision of the statute may not survive scrutiny if followed; however, in this case, the Town gave the Sizemores ample time and repeated notice that their zoning permit would expire if they failed to make progress on their construction activities. Indeed, the Sizemores were given two years and ten months from the date of their first warning, along with an opportunity to make "the developer's case" why their zoning permit should not be revoked. The Sizemores responded to their last warning with nothing more than a copy of a letter from the State Highway Administration about its intention to build a depressed curb and sidewalk as part of the SHA Streetscape Program.

The Board found that, by January 12, 2009, there had been neither satisfactory progress nor substantial completion of the site plan during the preceding five years, in violation of the Town's zoning ordinance § 290-27(E). The Board stated:

> The [Board of Appeals] concludes that Appellant's failure to comply with the Code amounts to a lack of intent to complete the project, which could be interpreted as an abandonment of the project.

The Board acknowledged that Maryland has not issued an opinion on abandonment of vested rights, but refused to hold that "obtaining vested rights gives one the ability to leave a building partially constructed indefinitely and that the person not be required to comply with the Town Code requirements."

We cannot agree with the Sizemores' contention that § 290-27(E)(2) had no force against their vested right. The logical extension of their position is that a vested zoning right to continue construction exists in perpetuity and is immune from the applicable zoning regulations. We know of no case, in Maryland or beyond, that supports this proposition.

29

We agree with the Board that to so hold would allow someone who obtains a vested right early in construction to leave that construction incomplete indefinitely. In our view, it is for precisely this reason that local zoning ordinances such as Town Code § 290-27(E)(2), place reasonable restrictions on the life of a zoning permit. We agree with the Board's finding that the Sizemores' failure to comply with the Town Code § 290-27(E)(2) correctly resulted in the expiration of their permit and the abandonment of both their zoning permit and their vested right in that permit. As a result, now that the Property is zoned residential, the Sizemores have no basis to support a new zoning permit for their restaurant, and the Board did not err in upholding the denial of the 2012 permit application.

## II.

### Failure to Assert a Vested Right in 2009

Next, the Sizemores argue that the Board erred in finding that they waived their vested rights argument by not raising it before the Board in the 2009 hearing when the 2003 zoning permit was revoked. The Sizemores contend that the existence of such vested rights "had no legal relevance" to the 2009 hearing or the Board's decision to cancel their zoning permit. Appellees counter that the issue of vested rights "could not have been irrelevant to whether the Town properly cancelled the Sizemores' previous permit" because "[t]he existence of an irrevocable vested right was a defense to the cancellation of the 2003 permit." Appellees posit that the Board's 2009 decision was "conclusive on the question," and therefore the Sizemores' claim of vested rights is barred by the doctrine of res judicata. Alternatively, Appellees argue that the Sizemores waived their right to assert the existence of a vested right by failing to raise the issue with the Board in the 2009 appeal.

30

Whether a claim is so related to a prior litigation as to deem that claim barred by res judicata is a question of law when determined solely from the inspection of the record. *See Corkran, Hill & Co. v. Fruman*, 144 Md. 257, 257 (1923) (stating that, where the evidence on the issue of res judicata is not contradicted, a court may properly decide the question as a matter of law). The Court of Appeals has stated:

> The doctrine of *res judicata,* or claim preclusion, prevents parties from re-litigating issues that have already been decided by the courts. The doctrine is applicable if the following requirements are met: "[1] if there is a final judgment [on the merits] in a previous litigation [and 2] where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated **and as to those which could have or should have been raised in the previous litigation**."

*Boland v. Boland*, 423 Md. 296, 362-63 (2011) (emphasis added) (citation omitted).

Generally, "the doctrine of *res judicata* has been held not to be applicable where the earlier decision was made not by a court of record, but by a board of zoning appeals, an administrative agency." *Whittle v. Bd. of Zoning Appeals of Baltimore Cnty.*, 211 Md. 36, 44 (1956) (citing *Knox v. Mayor & City Council of Baltimore*, 180 Md. 88 (1941)). In 1967, the Court of Appeals, in *Gaywood Community Association v. Metropolitan Transit Authority*, stated that "[w]hile the action of an administrative agency . . . may resemble res judicata, it is not . . . the same as the final decision of a proceeding on its merits by a court of competent jurisdiction." 246 Md. 93, 100 (1967). However, the Maryland courts have since retreated from this position, acknowledging that "'innumerable controversies are decided today, by boards of legislative creation, of a character that traditionally fell within the scope of judicial inquiry.'" *Bd. of Cnty. Comm'rs of Cecil Cnty. v. Racine*, 24 Md.

App. 435, 446, 451 (1975) (quoting *Hecht v. Crook*, 184 Md. 271, 277 (1945) and citing Davis, Administrative Law, § 18.03, 556 (1958)). Thus, although "the legal doctrine giving binding effect to decisions by zoning boards should not be fully equated with the doctrine of res judicata," this Court has concluded that "[i]t is quite plain . . . that at least some of the principles of the doctrine of res judicata are applicable to decisions by zoning boards." *Racine*, 24 Md. App. at 450, 447. The Court of Appeals has also recognized that, under certain circumstances, such as where an administrative agency is performing a quasi-judicial function, the principles of res judicata are applicable. *Cicala v. Disability Review Bd. For Prince George's Cnty.*, 288 Md. 254, 264, 267 (1980) (citing *White v. Prince George's Cnty.*, 282 Md. 641, 658 (1978)) (applying the principles of res judicata to a case involving two administrative hearings, but holding that res judicata did not apply because the issues in the two administrative hearings were not identical). Accordingly, the principles of res judicata apply to the present matter involving two decisions of the same administrative body regarding the application of the same facts and law.

In keeping with the above precedent, the Board in 2012 determined that the Sizemores' claim of vested rights should have been raised in the previous litigation and that its 2009 decision had preclusive effect. The Board stated:

> The issue of vested rights is an issue that involves the Town and the Appellant regarding the Permit and [the Sizemores'] ability to proceed with construction under the Permit; the same parties and the same subject matter before the BOA in Case No. 2009-1. The matter was disposed of by the BOA in 2009.

As stated above, the record is clear that the parties in the 2009 hearing are the same as in the 2013 hearing. The subject matter of the 2009 hearing concerned the validity of zoning permit No. 5077 to continue construction of the "Beef & Reef" on the Property in light of the fact that the Sizemores had failed to comply with zoning ordinances by "satisfactorily proceeding" with the construction. The fact that the Town permitted the Sizemores to continue with construction under the permit following the 2004 rezoning means the Town recognized their vested rights under the 2003 permit. Thus, the Sizemores' vested right was a necessary predicate in the 2009 appeal to the Board, even if not directly addressed by the Sizemores, because the issue was whether that vested right— the right to continue construction of the resturaunt—was properly extinguished under § 290-27(E)(2).

When the Sizemores applied for a new zoning permit in 2012, a restaurant was no longer a permitted use in the R-V zone, and, as discussed above, the Sizemores' vested right was extinguished in 2009 after they abandoned that right by failing to comply with Town Code § 290-27(E)(2) after reasonable notice. Thus, although the Sizemores' legal argument—that they had not abandoned their vested right and were entitled to a new permit in 2012—was presented in the context of the 2012 permit application, the matter of their vested right in the construction of a restaurant was fairly disposed of by the Board in 2009. The Court of Appeals has long recognized in zoning appeals involving a permit re-application "the proposition that it would be arbitrary for the board to arrive at opposite conclusions on substantially the same state of facts and the same law." *Whittle*, 211 Md. at 45 (citations omitted). Accordingly, the Board did not err in determining that the vested

33

rights argument should have been raised in Case No. 2009-1 and that the matter was disposed of in 2009.

## III.

## The Tolling Bill

In the Sizemores' brief and reply brief to this Court, they make abundantly clear that they did not raise the Tolling Bill in 2012 as part of their request for a new zoning permit.[13]  Rather, the Sizemores contend that the Board's failure to consider the Tolling Bill in 2009—which the Sizemores argue applied to their zoning permit No. 5077—constituted a "mistake or inadvertence" on the part of the Board in 2009 that would allow it to reconsider, in 2012, its prior revocation of the zoning permit.  They argue that res judicata does not apply to bar an administrative body from reconsidering an erroneous determination of law.  However, because we determine that the Board correctly declined to reconsider its 2009 decision, we do not reach whether the Appellant is barred by res judicata from arguing the application of the Tolling Bill to that decision.[14]

---

[13] For reasons unclear to Appellant and this Court, the Appellees argue that the Tolling Bill is res judicata, or waived, as to the Sizemores' petition for a new zoning permit.

[14] This Court in *Lawrence M. Brandt, Inc. v. Montgomery County Commission on Landlord-Tenant Affairs*, held that an administrative body lacks the authority to reconsider an issued opinion unless a motion for reconsideration is timely filed and the administrative body *may not* reconsider an order after an appeal has been lodged in the courts. 39 Md. App. 147, 160 (1978). Here, the Board issued its opinion on July 28, 2009, and the Sizemores sought judicial review in the circuit court and, thereafter, in this Court.  They failed to petition the Board to reconsider its decision prior to judicial review, and the Board correctly found that "it d[id] not have the authority to reconsider a case . . . after the decision was appealed to the circuit court and then to the Court of Special Appeals."

Regardless, the sunset provisions of the Tolling Bill limited its application to a period of years—between January 1, 2008, and June 30, 2010. SG § 11-202; 2009 Md. Laws, ch. 334 (SB 958). Appellant failed to present any argument regarding the Tolling Bill until May 20, 2010, and the Board had no opportunity to address the issue prior to 2012. Notwithstanding those failures, even were the Tolling Bill to have applied to the 2003 permit, it would only have preserved the permit through June 30, 2010. Thereafter, the zoning permit could have been properly revoked for non-compliance with § 290-27(E), and application of the tolling bill would not have prolonged the survival of the permit. Accordingly, the Sizemores' July 20, 2012, attempt to reinstate the 2003 zoning permit through the Tolling Bill was moot because the Tolling Bill could no longer revive or sustain a zoning permit after the expiration of its effective period.

If, at the time a question is before the Court, there is no longer any effective remedy that can be provided, the question is moot. *Attorney Gen. v. Anne Arundel Cnty. Sch. Bus Contractors Ass'n, Inc.,* 286 Md. 324, 327 (1979) (citations omitted). "Generally, appellate courts do not decide academic or moot questions," *id.*, and we decline to do so here.

**JUDGMENTS OF THE CIRCUIT COURT FOR CALVERT COUNTY SUSTAINING THE RESOLUTION OF THE BOARD OF APPEALS OF CHESAPEAKE BEACH, MARYLAND AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**