REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 429

September Term, 2015

_____

STATE OF MARYLAND

v.

WILLIAM BRAVERMAN, ET AL.

_____

Woodward,
Arthur,
Zarnoch, Robert A.,
        (Retired, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed:  June 1, 2016

*Judge Daniel A. Friedman did not participate
in the Court's decision to report this opinion
pursuant to Rule 8-605.1.

Maryland landowners brought a class action against the State, alleging a taking in violation of the Maryland Constitution. After several years of litigation, two motions for summary judgment, and an appellate ruling in a related case, the landowners ultimately prevailed, and the Court of Appeals affirmed the decision in their favor.

Upon a request by the landowners' attorneys, the circuit court ordered the State to pay $5 million in attorneys' fees. The State appealed. We reverse.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

**A.   Introduction: Ground Leases and the 2007 Modifications to the Ground Lease System**

This case is the latest chapter in the litigation that grew out of the 2007 legislative modifications to Maryland's centuries-old system of financing real estate purchases through the use of "ground leases." *See generally State v. Goldberg*, 437 Md. 191 (2014); *Muskin v. State Dep't of Assessments and Taxation*, 422 Md. 544 (2011).

In very brief summary, a ground lease is a 99-year, perpetually renewable lease, by which an owner rents land to a lessee, who is allowed to use and improve the land much as a typical landowner would. Ground leases are quite common in residential real estate in Baltimore City and have been employed in other areas of the State as well.

Under a ground lease, the lessee agrees to pay a specified amount of yearly rent, as well as taxes and other assessments. If the lessee defaults, the ground-lease owner may become entitled to reenter the property and eject the tenant, terminate the lease, and take possession of the land and any improvements. When the ground-lease owner

successfully enforces the right of reentry, the lessees lose any equity that they had accrued.

In late 2006, the *Baltimore Sun* ran a series of articles highlighting what it considered to be grave and unfair abuses by ground rent owners. Among other things, the articles reported that tenants had been evicted, and had lost all of their equity, after they failed to make ground-rent payments totaling far less than the value of their homes.

Galvanized by the articles, the General Assembly unanimously passed two laws that altered the ground-rent system in the 2007 legislative session. Chapter 290 mandated that the lessors record their leases in a central registry upon pain of losing their reversionary interests and having fee-simple title vest in their lessees. Chapter 286, the provision at issue in this case, eliminated an action for ejectment in most cases involving a failure to pay ground rents on residential real estate. In place of the action for ejectment, Chapter 286 established a lien-and-foreclosure remedy, similar to the remedy for mortgage foreclosures. Under the lien-and-foreclosure remedy, the tenants would not lose their equity if the proceeds of the foreclosure sale exceeded the unpaid rent and the recoverable costs.

After the 2007 legislation, the market for ground leases, previously seen as a stable, low-risk investment, dropped drastically.

**B.    The Early Phases of this Litigation**

On November 1, 2007, William Braverman, Stanley Goldberg, and 47 other plaintiffs filed suit in the Circuit Court for Anne Arundel County to challenge Chapter 286. After several amendments, their complaint alleged that the legislation resulted in

- 2 -

both the physical and regulatory taking of property without just compensation in violation of the federal and State constitutions and that it violated the Contract Clause[1] and the Tenth Amendment of the United States Constitution.[2] The sole defendant was the State of Maryland.

The State removed the case to federal court, but the court on its motion exercised its discretion to remand the case to the circuit court. The circuit court rejected the State's effort to transfer the case to Baltimore City on grounds of improper venue and forum non conveniens. The court did, however, dismiss all claims that alleged a physical taking of property. In addition, the court certified the case as a class action for purposes of liability, but not damages.[3]

After several years of litigation, in September 2010, both parties filed cross-motions for summary judgment. On January 6, 2011, the circuit court denied the motions, stating "that the evidence presents genuine and novel questions of law as to whether Chapter 286 constitutes a taking."

---

[1] U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . [l]aw impairing the [o]bligation of [c]ontracts").

[2] U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people").

[3] The legislation arguably damaged individual owners in individual ways, so that common questions of law or fact might not "predominate over questions affecting only individual members" on the issue of damages. Md. Rule 2-231(b)(3).

## C. The *Muskin* Decision

Meanwhile, a challenge to Chapter 290, the registration provisions of the 2007 legislation, was wending its way through the courts. On October 25, 2010, the Circuit Court for Baltimore City upheld Chapter 290. Exactly one year later, however, a divided Court of Appeals reversed. *Muskin v. State Dep't of Assessments and Taxation*, 422 Md. 544, 554 (2011). In a 5-2 decision, the *Muskin* Court held that, by extinguishing ground rents and transferring title to lessees as a penalty for the failure to record ground leases, the legislation abrogated vested rights and took private property without just compensation in violation of the Maryland Constitution. *Id.* at 553; *id.* at 560; *id.* at 563; *id.* at 565.[4] Judge Adkins, joined by former Chief Judge Bell, dissented. *Id.* at 568 (Adkins, J., dissenting).

*Muskin* did not directly concern Chapter 286 and its replacement of the right of reentry with the lien-and-foreclosure remedy. Nonetheless, in reaching its decision, the *Muskin* majority implied that the owner of a ground lease had a vested right in the right of reentry. For example, the Court stated: "A ground lease creates a bundle of vested rights for the ground rent owner, a contractual right to receive ground rent payments *and the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew*." *Muskin*, 422 Md. at 559 (emphasis added). The Court added: "*These two rights cannot be separated from the other*; together they are the

---

[4] The *Muskin* Court expressly assumed that Chapter 286 would not violate the United States Constitution. *Id.* at 550.

- 4 -

essence of this unique property interest, *and* as such, *vested rights analysis must consider them together*." *Id.* at 559-60 (emphasis added).

On the other hand, the *Muskin* Court recognized "an exception" to the "general prohibition" against abrogating vested rights. *Id*. at 561. The exception, wrote the Court, "applies solely to remedies and rules of evidence." *Id.* Under the exception, "the Legislature has the power to alter the rules of evidence and remedies, which in turn allows statutes of limitations and evidentiary statutes to affect vested property rights." *Id.* (citations omitted).

In short, *Muskin* did not clearly decide the question of whether the General Assembly had impermissibly deprived ground-lease owners of a vested right, or whether it had merely altered the applicable remedies, when it substituted the lien-and-foreclosure remedy for the right of reentry that was implemented through an action for ejectment.

**D.  Summary Judgment and Affirmance on Appeal**

Immediately after the *Muskin* decision, the plaintiffs in this case renewed their motion for partial summary judgment on the claim that Chapter 286 violated the Maryland Constitution by abrogating their vested right to reenter the leased property in case of a default. On December 20, 2011, the circuit court granted their motion.

After the grant of summary judgment on the State constitutional claims, the plaintiffs secured a final judgment by having the court dismiss all remaining claims, including any individual claims for damages by the two named plaintiffs, on mootness grounds. The State appealed, and a divided Court of Appeals affirmed. *State v. Goldberg*, 437 Md. 191, 199 (2014).

In reaching its decision, the *Goldberg* majority rejected the State's contention that Chapter 286 abrogated no vested rights, but simply substituted the new lien-and-foreclosure for the previous remedy of ejectment, which facilitated the right of reentry. Instead, the majority held that the legislation unconstitutionally impinged upon a vested right to reenter the leased premises and to terminate the lease. *Id.* at 216-17. Two judges dissented. *Id.* at 217 (Adkins, J., dissenting); *id.* at 227 (Watts, J., dissenting).

On remand, the State agreed not to enforce the unconstitutional statute. The court awarded no damages.

### E. The Fee Award

Class counsel represented the class on a contingent-fee basis, under which no fee would be due or payable unless the action were successful. The fee agreement did not identify a percentage of any recovery that would accrue to counsel in the event of settlement, trial, or appeal. *See* Md. Lawyers' R. of Prof'l Conduct 1.5(c). Instead, counsel agreed that if the lawsuit were certified as a class action (as it was), they would "apply to the court for any success fee."

In response to the Court of Appeals' decision in *Goldberg*, the plaintiffs filed a fee petition in the circuit court. In the petition, class counsel requested over $5,560,000.00 in fees, $109,925.45 in costs, and a "fee multiplier" of 1.5 times the fee award, or more than $2,780,000.00, because of the undesirability of the representation, the State's refusal to resolve the case, and the amount of value restored to the class.[5]

---

[5] The request for the fee multiplier also cited the risk that the class would recover nothing, as well as the delay in payment, both of which would appear to be characteristic

- 6 -

After an evidentiary hearing, the circuit court ordered the State to pay $5 million in fees. In reaching that decision, the court employed a number of theories: 42 U.S.C. § 1988, which authorizes an award of attorneys' fees in an action to enforce the provisions of a number of federal statutes; the common-fund doctrine, under which class counsel may receive a fee from the monetary recovery that they generate for the class; Md. Code (1974, 2015 Repl. Vol.), § 12-106 of the Real Property Article ("RP"), which allows a court to award reasonable legal fees that a prevailing "defendant" has "actually incurred" in a condemnation action; and Md. Rule 1-341, which allows a court to award the "reasonable expenses, including reasonable attorneys' fees," that a party has "incurred" because the opposing party has maintained or defended a case in bad faith or without substantial justification.

The State appealed.

## QUESTION PRESENTED

This case boils down to one question: Did the circuit court err in concluding that attorneys' fees were authorized in this case?

---

of any contingent fee. In addition to the request for fees, costs, and the fee multiplier, counsel requested $103,180.00 for their local counsel, Sara H. Arthur, whose fees were to be paid by class counsel. Ms. Arthur is not related in any way to the author of this opinion.

We answer this question in the affirmative.  The circuit court had no legal authority to award any amount of attorney's fees.  We reverse.[6]

### THE CIRCUIT COURT HAD NO AUTHORITY TO AWARD FEES

#### A.  Attorneys' Fees

"We generally adhere to the 'American Rule,' in which each party is responsible for its own legal fees, regardless of who wins in the litigation."  *Henriquez v. Henriquez*, 413 Md. 287, 294 (2010) (footnote and citations omitted).  Exceptions are available only by contract, by statute or court rule, or (in rare instances) under a well-established common-law principle.  *See Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 445 & n.3 (2008).[7]

The circuit court premised its award of fees on four legal grounds.  The applicability of those grounds is a question of law, which we review on a de novo basis.  *See Barufaldi v. Ocean City, Maryland Chamber of Commerce*, 206 Md. App. 282, 295-

---

[6] Because we conclude that the circuit court had no authority to award any fees in any amount, we need not consider the State's additional contention that the amount of fees awarded was unreasonable and excessive.

[7] At common law, a plaintiff may recover his or her attorneys' fees if "'the wrongful conduct of a defendant forces a plaintiff into litigation with a third party'" or if "'a plaintiff is forced to defend against a malicious prosecution.'"  *Nova Research*, 405 Md. at 445 (quoting *Thomas v. Gladstone*, 386 Md. 693, 699 (2005)).  In addition, "an insurer is liable for the damages, including attorneys' fees, incurred by an insured as a result of the insurer's breach of its contractual obligation to defend the insured against a claim potentially within the policy's coverage, and this is so whether the attorneys' fees are incurred in defending against the underlying damage claim or in a declaratory judgment action to determine coverage and a duty to defend."  *Bankers & Shippers Ins. Co. v. Electro Enters.*, 287 Md. 641, 648 (1980).

96 (2012). To the limited extent to which the award depends on factual findings, we review the decision for clear error. *See Inlet Assocs. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 267 (1991) (concerning Rule 1-341).

## B.   42 U.S.C. § 1988

42 U.S.C. § 1988 allows the court to award attorney's fees to the prevailing party in:

> any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of [title 42], title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of [title 42].

42 U.S.C. § 1988(b).

The circuit court concluded that the plaintiffs were entitled to an award of fees under § 1988 because, it said, they had brought a "substantial claim" under 42 U.S.C. § 1983. To the contrary, the plaintiffs neither alleged nor could have alleged a § 1983 claim against the State of Maryland.

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Although the plaintiffs alleged that Chapter 286 violated the federal Constitution in several respects, they did not expressly or even implicitly set forth a claim for relief

under § 1983 – i.e., a claim that a "person" acting "under color of" Maryland law had deprived them "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. More important, the plaintiffs had no viable § 1983 claim against the sole named defendant in the case – the State of Maryland – because the United States Supreme Court has held that a State is not a "person" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Had the plaintiffs asserted § 1983 claims against the State officials who administered Chapter 286, they might have obtained a different result. *See*, *e.g.*, *Hafer v. Melo*, 502 U.S. 21, 23 (1991) (holding that "state officials sued in their individual capacities are 'persons' for purposes of § 1983"). If a plaintiff raises alternative grounds for relief under § 1983 and state law, but the court rules in the plaintiff's favor only on state-law grounds, the plaintiff is ordinarily entitled to attorneys' fees as long as "the § 1983 ground was substantial and grew out of the same facts." *Cnty. Exec. of Prince George's Cnty. v. Doe*, 300 Md. 445, 456 (1984); *accord Maryland Green Party v. State Bd. of Elections*, 165 Md. App. 113, 125 (2005).

We must, however, decide the case not on the basis of what the plaintiffs might have done, but on the basis of what they actually did. The plaintiffs named one and only one defendant – the State of Maryland. The State is not a "person" within the meaning of § 1983. As a matter of law, therefore, the circuit court had no authority to award fees against the State under § 1988.[8]

---

[8] Even if the plaintiffs had brought suit against a "person" within the meaning of § 1983, they would not have a § 1983 claim for a violation of the Contracts Clause. *Crosby*

## C.  The Common-Fund Doctrine

Under the "common-fund doctrine," class counsel are paid out of the monetary recovery that they generate for the class.  *See*, *e.g.*, *Hess Constr. Co. v. Bd. of Educ. of Prince George's County*, 341 Md. 155, 166 (1996) (stating that an equity court has "the power to direct payment of counsel fees out of a fund that has been created by the efforts of counsel"); *Bowling v. Brown*, 57 Md. App. 248, 268 (1984) (allowing fees "where a common fund, benefitting the public, has been created as a result of litigation").

The circuit court employed the common-fund doctrine to support its award of fees to class counsel.  The court erred, because the common-fund doctrine does not apply in this case for at least two reasons.

First, by definition, the common-fund doctrine requires a fund.  In this case, however, the judgment resulted in the invalidation of the statute, but not in any actual monetary recovery or fund.  Second, the common-fund doctrine envisions that the class members themselves will pay class counsel out of the recovery that they receive.  In this case, however, the court ordered the State, and not the class members, to pay class

---

*v. City of Gastonia*, 635 F.3d 634 (4th Cir.) (citing *Carter v. Greenhow*, 117 U.S. 317 (1885), for the proposition that "recourse to § 1983 for the deprivation of rights secured by the Contracts Clause is limited to the discrete instances where a state has denied a citizen the opportunity to seek adjudication through the courts as to whether a constitutional impairment of a contract has occurred, or has foreclosed the imposition of an adequate remedy for an established impairment"), *cert. denied*, 132 S. Ct. 112 (2011). Furthermore, because the Tenth Amendment concerns limitations on federal power (*see supra* n. 2), it is difficult to imagine how a person acting under color of *state* law could possibly deprive anyone of any rights privileges, or immunities secured by that amendment.

counsel's fees. The circuit court erred in employing the common-fund doctrine in a case that generated no common fund and in ordering payment from outside a common fund.

The circuit court itself recognized that "no common-fund has actually been created." Nonetheless, the court reasoned that class counsel had "restored" an estimated $60 million in value to Maryland landowners. On the premise that it would be "impractical to seek reimbursement from the class," the court ordered the State to pay $5 million in fees.

In that aspect of its decision, the circuit court relied on *Brewer v. School Bd. of Norfolk*, 456 F.2d 943 (4th Cir. 1972), which employed what that court called "a quasi-application of the 'common fund' doctrine." *Id.* at 951. In *Brewer*, the plaintiffs had secured free busing to facilitate an earlier desegregation order against the school board. Although the order yielded a pecuniary benefit to the students, the court recognized that it did not generate a common fund or result in a monetary recovery. *Id.* Nonetheless, because the "basic purpose" of the order was "to secure transportation *without cost or deduction*," the court required the school board to pay the students' attorneys' fees. *Id.* at 952 (emphasis in original).

*Brewer* is of questionable viability in 2016. *Brewer* was decided at a time when federal courts were devising federal common-law theories to compensate prevailing parties for the attorneys' fees that they incurred in civil rights cases and other litigation against governments and governmental officials. The Supreme Court put an end to those efforts in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 269 (1975), when it held that federal law recognizes only statutory exceptions to the American Rule.

"[C]ourts," the Supreme Court wrote, "are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases." *Id.*[9]

In light of *Alyeska*, it appears that the *Brewer* court overstepped its authority. We would likewise overstep our authority by extending Maryland's common-fund doctrine to a situation without a fund. Applying the common-fund doctrine where there is no fund is not just uncommon; it is unheard of in Maryland (or anywhere else within the last 44 years). We do not start today.[10]

The intangible value restored to the class is not a "fund." But even if it were, the common-fund doctrine would only allow an award of fees off the top of the fund, not on

---

[9] A year after *Alyeska*, Congress responded to the Supreme Court by passing 42 U.S.C. § 1988, which authorizes an award of reasonable attorneys' fees to a prevailing party in an action to enforce 42 U.S.C. § 1983, among other federal statutes. Had *Brewer* been decided after the enactment of § 1988, the Fourth Circuit could have employed that statute to award fees to the students' attorneys. As previously discussed, however, the circuit court could not employ § 1988 in this case, because the plaintiffs neither brought nor could have brought a § 1983 action against the only named defendant – the State of Maryland.

[10] Even if *Brewer* were still viable, it is distinguishable. Unlike *Brewer*, this was not a case in which the basic purpose was to secure relief "without cost or deduction" to the class members. Had the litigation resulted in a monetary settlement or an award of damages to individual class members, class counsel would undoubtedly have applied to the court for compensation that would be paid out of the recovery.

top of it.  By reducing the class members' recovery, the doctrine allocates costs between the class and its counsel.  It does not allocate costs between the respective parties.

Class counsel cannot use the common-fund doctrine to collect fees out of nothing.  Nor can the class employ the common-fund doctrine to require its adversary to pay the class counsel.  As a matter of law, therefore, the circuit court erred in relying on the common-fund doctrine to support the award of fees in this case.

**D.     Section 12-106 of the Real Property Article**

Subtitle 1 of Title 12 of the Real Property Article contains the general rules for eminent domain proceedings.  Section 12-106(a) states that in those proceedings "[*t*]*he plaintiff* shall pay all the costs in the trial court."  (Emphasis added.)  Section 12-106(b) states that "[t]he costs in a condemnation proceeding include . . . (5) [a]n allowance *to the defendant*, as fixed by the court, for the reasonable *legal*, appraisal, and engineering *fees* actually incurred by *the defendant* because of the condemnation proceeding, if the judgment is for the *defendant* on the right to condemn."  (Emphasis added.)

In plain English, § 12-106(b)(5) compels the court to shift the costs of a condemnation proceeding from the *defendant* to the *plaintiff*.  (Emphasis added.)  Despite the plain language of § 12-106(b)(5), however, the circuit court concluded that the statute authorized an award of fees to the plaintiffs from the defendant.  The circuit court's interpretation is untenable.

Nothing about this statute is ambiguous, debatable, or open to interpretation.  "Defendant" does not mean "plaintiff," and "plaintiff" does not mean "defendant."  Unless words are to become untethered from all meaning, § 12-106(b)(5) cannot be read

to authorize a court to require the State, as the defendant, to pay the plaintiffs' attorneys' fees.

Section 12-106 envisions an award of fees to the defendant because it applies in a proceeding in which the State, or one of its instrumentalities or political subdivisions, exercises the right to acquire "private property for public use by condemnation" (RP § 12-101) in accordance with the rules governing "actions for acquisition of property by condemnation under the power of eminent domain" (Md. Rule 12-201(a)) in Title 12, Chapter 200, of the Maryland Rules. In those proceedings, the State is the plaintiff; the property owner, whose private property is taken for public use under the power of eminent domain, is the defendant. "[I]f the judgment is for the defendant on the right to condemn," the plaintiff– i.e., the State – must pay the defendant's "reasonable legal . . . fees." RP § 12-106(b)(5).

This is not a case in which the State exercised the rights of eminent domain to acquire property by condemnation. The plaintiffs, however, claim that this is an "inverse condemnation" case, where an owner attempts to recover the value of property that the government has taken through legislative or regulatory action, without any "'formal exercise of the power of eminent domain.'" *See Litz v. Maryland Dep't of the Env't*, 434 Md. 623, 653 (2013) (quoting *College Bowl, Inc. v. Mayor & City Council of Baltimore*, 394 Md. 482, 489 (2006)); *see also Litz v. Maryland Dep't of the Env't*, 446 Md. 254, 267-69 (2016) (allowing claim for inverse condemnation based on governmental inaction where government had duty to act). We shall assume, without deciding, that this is an inverse condemnation action. Even so, § 12-106(b)(5) does not apply in inverse

- 15 -

condemnation claims, because, by definition, they do not involve the power of eminent domain.  As a matter of law, therefore, the circuit court erred in employing RP § 12-106(b)(5) to award fees in an inverse condemnation action. [11]

Finally, § 12-106(b)(5) authorizes an award of fees that have been "actually incurred."  But although some of the individual plaintiffs did advance about $100,000.00 to class counsel to cover some of the initial costs of the litigation, no one has "actually incurred" any attorneys' fees, much less $5 million in fees.  Nor does it appear that the plaintiffs have any contractual liability for the fees, as the fee agreement stated that class counsel would look only to the court for an award of fees.  For that additional reason, the circuit court erred, as a matter of law, in relying on § 12-106(b)(5) to require the State to pay class counsel's fees.[12]

---

[11] The circuit court did not quote or discuss the language of § 12-106(b)(5).  Instead, it wrote abstractly of a statute that allows courts to award attorneys' fees where the State attempts to condemn private property, but the property owner prevails on the right to condemn.  That abstract assertion is accurate, but only insofar as the State attempts to condemn private property in an action for eminent domain under Title 12, Subtitle 1, of the Real Property Article and Title 12, Chapter 200, of the Maryland Rules.

[12] In every legislative session since 2013, the General Assembly has considered and rejected legislation that would authorize a court to award reasonable attorneys' fees to a prevailing party in an action to remedy the violation of a Maryland constitutional right, such as a regulatory taking by inverse condemnation.  The initial proposal was introduced by the Chair of the House Judiciary Committee at the request of the Chief Judge of the Court of Appeals.  H.B. 130, 2013 Gen. Assemb. Reg. Sess. (Md. 2013).  Subsequent iterations expressly authorized an award of fees against the State, as well as its political subdivisions and agents and employees of the State and its subdivisions.  H.B. 130, 2016 Gen. Assemb. Reg. Sess. (Md. 2016); H.B. 283, 2015 Gen. Assemb. Reg. Sess. (Md. 2015); H.B. 568, 2014 Gen. Assemb. Reg. Sess. (Md. 2014).  These proposed enactments would have been unnecessary if the circuit court already had the power to order the State to pay attorneys' fees when it took property by inverse condemnation.

**E.    Rule 1-341**

If a court finds that a party maintained or defended a civil proceeding in bad faith or without substantial justification, Rule 1-341(a) permits the court, on motion, to require the party, the party's attorney, or both to pay "the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it."  In awarding $5 million in fees to class counsel, the circuit court found that the State had acted both in bad faith and without substantial justification.

Ordinarily, an appellate court will affirm a finding of bad faith or substantial justification unless "it is clearly erroneous or involves an erroneous application of law." *Inlet Assocs. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 267 (1991).  In our view, one of the circuit court's findings was clearly erroneous, while others were legally incorrect.

**1.    Lack of Substantial Justification**

A party lacks substantial justification to maintain or defend a proceeding when it has no "'reasonable basis for believing that the claims would generate an issue of fact for the fact finder'" (*id.* at 268 (quoting *Needle v. White, Mindel, Clarke & Hill*, 81 Md. App. 463, 476 (1990)), or when "'the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for extension, modification or reversal of existing law.'" *Id.* (quoting Md. Lawyers' R. of Prof'l Conduct 3.1).  By contrast, a claim or defense has substantial justification when it is "'fairly debatable' and 'within the realm of legitimate advocacy.'" *Id.* (quoting *Newman v. Reilly*, 314 Md. 364, 381 (1988)); *see also Yamaner v. Orkin*, 313 Md. 508, 516 (1988) (stating that Rule 1-341 is not intended to penalize a party or counsel for

- 17 -

asserting a colorable claim or defense). "[T]he fact that a court rejects the proposition advanced by counsel and finds it to be without merit does not mean the proposition was advanced without substantial justification or in bad faith." *Legal Aid Bureau, Inc. v. Farmer*, 74 Md. App. 707, 713 (1988); *see also Black v. Fox Hills North Cmty. Ass'n, Inc.*, 90 Md. App. 75, 84 (1992) (Rule 1-341 does not apply merely because party "urged a legal theory which was not adopted by the court"). It is "erroneous to determine a lack of substantial justification from the vantage point of judicial hindsight." *Legal Aid Bureau, Inc. v. Bishop's Garth Assocs. L.P.*, 75 Md. App. 214, 222 (1988).

The circuit court was clearly erroneous in concluding that the State lacked substantial justification to defend this proceeding. After dismissing several counts of the plaintiffs' complaint because of their legal insufficiency, the court itself denied the parties' cross-motions for summary judgment, stating "that the evidence presents genuine and novel questions of law as to whether Chapter 286 constitutes a taking." Indeed, in justifying the magnitude of the $5 million fee, class counsel acknowledged that "[t]his case presented novel and difficult constitutional questions." Yet, if those issues were sufficiently novel, difficult, and debatable to justify dismissing portions of the complaint and denying cross-motions for summary judgment, they must also have been sufficient to justify the State in defending the case. *See Needle*, 81 Md. App. at 478-80 (holding that circuit court was clearly erroneous in making post-trial award of Rule 1-341(a) sanctions against plaintiff after denying defendant's motion for summary judgment before trial and motions for judgment during trial).

The circuit court reasoned that after *Muskin* Chapter 286 was obviously indefensible. To the contrary, while *Muskin* contains dicta implying that a ground rent owner has a vested right of reentry (*Muskin*, 422 Md. at 559), it also recognizes "an exception" to the "general prohibition" against abrogating vested rights when the legislature exercises a power to alter remedies. *Id*. at 561. Both before and after the *Muskin* decision, the State had contended that the Chapter 286 represented a legitimate exercise of the General Assembly's power to substitute one remedy for another.

The Court of Appeals did not settle the question of Chapter 286's constitutionality until *Goldberg*, which effectively held that the legislation abrogated a vested right in a remedy. *See Goldberg*, 431 Md. at 216-17. Yet, even then, two judges of the Court of Appeals dissented, at length, from the majority's decision and insisted that the legislation was constitutional. *Id.* at 217 (Adkins, J., dissenting); *id.* at 227 (Watts, J., dissenting). When two of the seven judges of the State's highest court agree with a party's position, it is, as a matter of law, erroneous to conclude that the party lacks substantial justification to advocate that position.[13]

---

[13] Even if *Muskin* had destroyed any justification for defending this litigation (which it did not), the court could award only the fees and costs that the plaintiffs had "incurred" after the *Muskin* decision. The court could not base the fee award on the hours that class counsel claimed to have worked on the case during the entire, seven-year course of the litigation.

## 2. **Bad Faith**

A party acts in bad faith when it acts "vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons." *Inlet Assocs.*, 324 Md. at 268. Citing comments by a total of three of the 187 members of the General Assembly,[14] the circuit court traced the State's bad faith "intent on abolishing property rights" to "the very beginning of the law." The legislators' comments have no bearing on whether the State defended this litigation in bad faith.

Rule 1-341 concerns bad faith conduct in a "civil action." When the legislators made their comments, however, the legislation had not even become law, much less a subject of civil litigation. The court had no authority to impose sanctions against the State for comments made by three legislators before this litigation ever began.

Even if the legislators had made their comments in the course of the litigation, a statement by an individual legislator is not a party-admission by the State. *See, e.g., Bennett v. Yoshina*, 98 F. Supp. 2d 1139, 1153-54 (D. Haw. 2000), *aff'd*, 259 F.3d 1097

---

[14] The court cited Senator Gladden as stating that "[g]round rents are horrible" and that Chapter 286 "is the best way of getting rid of ground rents." It quoted Delegate McIntosh as asserting a "consensus" that "ground rents serve no viable, good purpose at this time" and announcing that the legislature had "ended ground rents in the way they do, in fact, exist." It quoted Senator McFadden as stating that "[t]he time has come for us to sunset this ground rent business." The court did not cite Delegate Niemann's statement that the legislative goal "was not to be punitive but to modernize the ground rent process," Delegate McIntosh's statement that the law would "provide a more equitable remedy for failure to pay the ground rents," or Delegate Rosenberg's statement that the "General Assembly has the power to substitute one remedy for another." Nor did the court cite the Attorney General's contemporaneous opinion that Chapter 286 represented a constitutional substitution of the lien-and-foreclosure remedy for the remedy of ejectment.

(9th Cir. 2001); *see also id.* at 1154 ("[i]f every legislator could be said to speak on behalf of the state with regard to every piece of legislation, there could be no cogent state voice"). In any event, under the doctrine of separation of powers, courts simply should not inquire into the motives for enactment of the legislation. *See O'Hara v. Kovens*, 92 Md. App. 9, 23 (1992). As a matter of law, therefore, the circuit court erred in imposing sanctions on the State on account of comments by three legislators.[15]

The circuit court also erred in ignoring the Attorney's General legal duty, "as the State's advocate[,] to present the best arguments he can possibly muster in support of the State's position." *State ex rel. Att'y Gen. v. Burning Tree Club, Inc.*, 301 Md. 9, 36 (1984). A presumption of constitutionality attaches to the enactments of the General Assembly (*id.* at 35), and "the Attorney General ordinarily has the duty of appearing in the courts as the defender of the validity" of those enactments. *Id.* at 37. Even if the Attorney General believes that a statute may ultimately be held unconstitutional, that belief "does not make it such." *Id.* at 36. "A statute, with its presumption of constitutionality, has just as much right to an advocate of its validity" as a criminal defendant has to an advocate of his or her defense. *Id.*

---

[15] In addition to the legislators' comments, the court faulted the State for the General Assembly's "rush to enact Chapter 286." The legislative record refutes the court's assertion. At the beginning of the session, Chapter 286 originated as S.B. 396 and H.B. 463 (which was introduced by the Speaker at the request of the administration). The first reading in the Senate occurred on February 2, 2007. The first reading in the House occurred on March 19, 2007. The Senate passed its version of the bill on March 22, 2007. The House passed an amended version of the bill on March 31, 2007. The Senate passed the bill, as amended by the House, on April 2, 2007. Nothing in this record suggests any manner of undue haste.

This is not to say that Attorney General must defend a law that is undeniably unconstitutional. *See*, *e.g.*, *American Trucking Ass'ns, Inc. v. Goldstein*, 312 Md. 583, 589 (1988). Chapter 286, however, was not such a law. At the outset of the case, the circuit court dismissed part of the plaintiffs' allegations about the law. Later, the court denied cross-motions for summary judgment because of "genuine and novel questions of law" about the constitutionality of Chapter 286. The plaintiffs agreed that the case "presented novel and difficult constitutional questions." With the impermissible benefit of hindsight, one might say that *Muskin* foreshadowed the ultimate outcome in this case; yet not only did *Muskin* not decide the specific issue of Chapter 286's constitutionality, but the *Muskin* majority made some statements implying that the legislature could constitutionally substitute one remedy for another, as the State believed it had done. Even when *Goldberg* invalidated Chapter 286, two judges of the Court of Appeals wrote forcefully in support of their conclusion that the majority was wrong and that the legislation was valid. Once the Court of Appeals had settled the question of Chapter 286's constitutionality, the State accepted the decision. In these circumstances, the State, as a matter of law, did not act in bad faith in defending the constitutionality of Chapter 286.[16]

___

[16] As an additional instance of bad faith, the court cited the State's "scorched earth litigation" tactics "following the decision in *Muskin*." We disagree that the State acted in bad faith by continuing to defend a statute whose invalidity was, at most, in question after *Muskin* and by advocating a position that won the approval of two judges on the Court of Appeals. Elsewhere, the court seemed to object that the State attempted to remove the case to federal court (on account of the numerous federal claims in the complaint) and to have it transferred to Baltimore City (where the majority of ground rents are located). Suffice it to say that it was no more of an exercise in bad faith for the State to assert its

### 3. Fees "Incurred"

Finally, Rule 1-341(a), much like RP § 12-106(b)(5), authorizes an award only of the fees that a party has "incurred." A party can "incur[]" fees, within the meaning of the rule, even if a third party has paid the fees on the party's behalf. *See Worsham v. Greenfield*, 435 Md. 349 (2013). Here, however, neither the plaintiffs nor any third parties acting on their behalf have "incurred" any fees, let alone the $5 million in fees that the circuit court awarded. When "a party does not incur any expense for attorney's fees, those fees cannot be reimbursed" under Rule 1-341. *Seney v. Seney*, 97 Md. App. 544, 552 (1993). For this additional reason, the award of fees cannot stand.[17]

### CONCLUSION

For the foregoing reasons, we reverse the order of the circuit court on the issue of attorney's fees.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. COSTS TO BE PAID BY APPELLEES.**

---

right to remove or transfer the case to a jurisdiction in which it could have been brought than it was for the plaintiffs to bring the case in the forum of their choice.

[17] As previously noted, some of the class members did incur about $100,000.00 in costs when they advanced that sum to class counsel at the outset of the litigation. Nonetheless, because the State did not defend the case in bad faith or without substantial justification, the circuit court could not have employed Rule 1-341 to require the State to reimburse the class members for those costs.